Mr. Justice CAMPBELL
 

 delivered tbe opinion of tbe court.
 

 Tbe appellants filed their bill to recover land within tbe district, in the possession of tbe defendants, and for an account of the rents, profits, and receipts, during tbe. period of their occupancy. They allege that James Fletcher, their ancestor, died in 1804, leaving a valid will, by which be devised to bis widow and three children tbe principal portion of bis succession, and appointed tbe former tbe executrix. Tbe property described in the bill bad been sold in 1801, but tbe purchaser bad not paid tbe price stimulated at tbis time. Tbe testator directed^ that if the purchaser should complete tbe purchase, tbe sum received should be put to interest, on good security, for tbe mother and children, until tbe children should attain tbe age of sixteen years, when the succession should be divided. In May, 1806, tbe executrix agreed with tbe purchaser to rescind tbe contract of sale, received a conveyance of bis title to. tbe heirs of Fletcher, and refunded to him tbe money be bad paid, being near $4,000,
 

 . In June, 1806, tbe executrix filed her petition in tbe Superior Court of tbe Orleans Territory, being tbe court of general law, equity, and probate jurisdiction, for the Territory, in which she declares tbe cancellation of tbe contract of sale aforesaid; and to enable her to refund tbe money, she bad borrowed that sum from Daniel Clark; that the land was unproductive, and that- she was unable to pay her debt. She prayed an order for tbe sale of tbe property, to provide for tbe education and maintenance of her minor children, and tbe discharge of her debt, and to. carry tbe will of her husband into effect respecting the disposition of the remainder of the purchase-money. Tbe
 
 *277
 
 court made the necessary order, to empower the executrix to sell and convey the lands for such price as she could obtain, and to receive the money therefor; also, to appropriate the sum necessary for the payment of her debt, and to put out the remainder at interest, as required by the will.
 

 Daniel Clark became the purchaser at private sale from the executrix, for the'sum of $9,000, and received her conveyance.
 

 The appellants impeach this sale as unauthorized and illegal, and insist upon their title under the conveyance to them.
 

 The defendants claim by their answers as’ bona fide purchasers from persons deriving their title by valid conveyances in Sood faith from Daniel Clark, and affirm that the family of 'letcher left the United States in 1807, and enjoyed the benefit of the money paid to the executrix; that the lands have become valuable by their improvements, and that they, and the persons under whom they claim, have held the possession since 1806. The bill was dismissed by the Circuit Court, on the ground that the remedy at law is plain, adequate, and complete, and from this decree this appeal is prosecuted.
 

 .The Supreme Court of Louisiana, in a contest between the appellants and other parties, for other lands, have decided that the executrix was not authorized to convey the shares of her minor children by private act. (Fletcher
 
 v.
 
 Cavelier, 4 La. R., 268; 10 La. R., 116, S. C.)
 

 But we are relieved from the duty of applying these decisions, or inquiring into the validity of the pleas of the appellees, by the opinion we have formed concerning the jurisdiction of the court of chancery over the cause. The. sixteenth section of the judiciary act of 1789 declares, “that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate, and complete remedy may , be had at law.”
 

 The bill in this cause is, in substance and legal effect, an ejectment bill. The title appears by the bill tó be merely legal; the evidence to support it appears from documents accessible to either party; and no particular circumstances are stated, showing the necessity of the courts interfering, either for preventing suits or other vexation, or for preventing an injustice, irremediable at law. In Welby
 
 v.
 
 Duke of Rutland, (6 Bro. P. C., cas. 575,) it is stated, that the general practice of courts of equity, in not entertaining'suits for establishing legal titles, is founded upon clear reasons; and the departing from that practice, where there is no necessity] for so doing, would be subversive of the legal and constitutional distinctions.between the different jurisdictions of law and equity; and though
 
 *278
 
 the admission of a party in a suit is conclusive as to matters of fact, or may deprive him of the benefit of a privilege which, if insisted on, would exempt him from the jurisdiction of the court, yet no admission of parties can change the law, or give .jurisdiction to a court in a cause of which it hath no jurisdiction.
 

 Agreeably hereto, the established and universal practice of courts of equity is to dismiss the plaintiff’s bill, if it appears to be grounded on a title merely legal, and not cognizable by them, notwithstanding the defendant has answered the bill, and insisted on matter of title. In Foley
 
 v.
 
 Hill, (1 Phil., 399,) Lyndhurst, Lord Chancellor, dismissed a bill upon an appeal from the Vice Chancellor upon the same grounds. He said “it was apoint of great importance to the practice of the court.” The objection was not made in the pleadings nor presented in the decree of the Vice Chancellor.
 

 This decree was affirmed by the House of Lords. (2 H. L., cas. 28.) The practice of the courts of the United States corresponds with that of the chancery of Great Britain, except where it has been changed by rule, or is modified by local circumstances or local convenience. This court has denied relief in cases in equity where the remedy at law has been plain, adequate, and complete, though the question was not raised’ by the defendants in .their pleadings, nor suggested by the counsel in their arguments. (2 Cr., 419; 7 Cr., 70, 89; 5 Pet., 496; 2 How., 383.) In Parsons
 
 v.
 
 Bedford, (3 Pet., 433,) the court insists on the necessity imposed on the Circuit Court in Louisiana, to maintain the distinction between the jurisdiction in which legal rights are to be ascertained, and that where equitable rights alone are recognised and equitable remedies. administered.
 

 And the result of the argument is, that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a con-’ stitutional right to a trial by jury.
 

 The appellants contend, that upon the pleadings and evidence a proper case for the jurisdiction of chancery appears,. and that the Circuit Court
 
 mero motu
 
 was not warranted in dismissing the bill: 1st. Because it is shown that in 1806 the children of Eletcher were minors, and they are authorized tO' call upon the defendants for an account as guardians. 2d. That the defendants being entitled to the estate of the .executrix and widow, under her conveyance, the plaintiffs can maintain, the bill for a partition. 3d. That the court of chancery is bet
 
 *279
 
 ter fitted , to take an account for rents, profits, and improvements, and may decide the question of title as incident to the account. 4th. That a multiplicity of suits will be avoided.
 

 There áre precedents in which the right of an infant to treat a person who enters upon his estate with notice of his title, as a guardian or bailiff, and to exact an account in equity for the profits, for the whole period of his occupancy, is recognised. (Blomfield
 
 v.
 
 Eyre, 8 Beav., 250; Van Epps
 
 v.
 
 Van Deusen, 4 Paige, 64.) But in those cases the title must, if disputed, b¿ established at law, or other grounds of jurisdiction must he shown. In the present case, the defendants have all entered upon the lands since the plaintiffs arrived at their majority. They are purchasers of adverse titles under which possession has been maintained for a long period. The hill does not rec-ognise, their title to any part of the land, and there has been no unity of possession; so that the hill cannot he maintained, either as a hill for an account on behalf of minors or for a partition. (Adams’s Eq., sec. 229; 4 Rand. Va. R., 74, 493.)
 

 Ñor can the court retain the hill, under, an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits,' and improvements. The rule of the court is, that when a suit for the recovery of the possession can • he properly brought in a court of equity, and a decree is given, that court will-direct an account as an incident in the cause.
 

 But when a party has a right to a possession, which he can enforce at law, his right to the rents and profits is also a legal right, aiid must be enforced in the same jurisdiction. The instances where hills for an account of rents and profits have been maintained- are those in which special grounds have been stated, to show that courts of law could not give a plain, adequate, and complete remedy. No instances exist where a person who had been successful at law has been allowed to file a bill for an account of rents and profits during the tortious possession held against him, or in which the complexity of the account has afforded a motive for the interposition of a court of chancery to decide .the title and to adjust the account, Dormer v. Fortescue, 3 Atk., 124; Barnewell
 
 v.
 
 Barnewell, 3 Rid. P. C., 24.) Nor does the case show that a multiplicity of suits would be avoided, or that justice could he administered with less expense and vexation in this court than a court of law.
 

 . Decree affirmed.