YEATMAN et al. v. BRADFORD et al.

(*Circuit Court, S. D. Tennessee, E. D.* January 8, 1891.)

EQUITY—PRACTICE—JURISDICTION—AUXILIARY BILL.

After there has been a final decree and confirmation of sale in a suit for the partition and sale of land, an auxiliary bill seeking to set aside as fraudulent a contract made by the parties after the final decree, and attacking the proceedings in that suit on the ground of want of proper service and other irregularities, cannot be maintained, since there is a complete remedy at law.

In Equity.

*Nash H. Burt, A. S. Colyar*, and *Warder & Evans*, for complainants.
*Clark & Brown*, for defendants.

KEY, J. The bill in this case alleges that on the 29th day of January, 1883, defendant Bradford, as an heir of P. B. West, filed a bill in this court for the sale for partition of certain wild mountain lands. This bill purported to make the other heirs of said West parties thereto. The present bill alleges that many of the heirs were not made parties to the original suit, and that others were made parties so imperfectly that no decree made in the cause is binding upon them; that 4th October, 1883, a decree was entered in the original cause, which recites that the cause was heard upon complainant's bill, the answers thereto, the judgment *pro confesso* heretofore taken against a portion of the defendants, and the proof in the cause; and, it appearing to the court that all the parties are *sui juris*, and represented in court by counsel, it is, by consent of counsel for all parties, given in open court, decreed that E. M. Dodson and W. D. Spears be appointed to sell the lands. This order of sale was revived May 9, 1884, and October 7, 1884. On 9th of May, 1885, these commissioners reported that they had sold the lands to complainant Bradford for $3,500, but that he had failed to comply with the terms of sale. At the same term of the court the commissioners were relieved and discharged, and the clerk of the court, as special commissioner, was ordered to sell the lands. June 29, 1885, the clerk sold the land to one Foster for $2,650. The report of this sale was confirmed, and the title divested out of his heirs and vested in the purchaser, Foster; and it was ascertained upon report that West's heirs were indebted to Foster $1,953.73, and to counsel in the cause $550, while the other costs were more than $150. The payment of these debts and fees and costs absorbed the entire fund resulting from the sale, and nothing was left for distribution. Foster made an arrangement by which the fees and costs were paid, and, as the indebtedness was due him, the court, 16th October, 1886, canceled his notes for the purchase money. This ended the action and jurisdiction of the court over the original cause. The present bill alleges that April 4, 1887, said Bradford and his sisters entered into a written contract with A. L. Spears, in which Spears agreed to furnish the money to pay Foster the money paid by him in his purchase, and he and Bradford and his sisters were to become

owners of the land. This transaction is attacked as fraudulent, **and the** chief object of the present bill is to set it aside. If the present **bill can** be maintained at all it must be upon the ground that it is dependent upon or ancillary to the original bill filed for partition. It cannot be sustained otherwise because of the want of the proper citizenship of the parties. If it be dependent upon the original bill, the citizenship of the parties does not affect it. If the original suit was ended, and had passed from the court, and afterwards transactions occurred in regard to the subject-matter of the suit with which the court had nothing to do, and over which it had no power or control, such transactions could not be brought before the court by a dependent bill, unless these latter transactions were a part of the links of a chain of fraud which had its beginning in the original suit. The averments of the bill make no such case as this, nor do they attempt so to do. If there be fraud, and it relates solely to the transactions which took place after the end of the original suit, an independent bill should be resorted to for their impeachment. It could have nothing to do with the decrees of the court which preceded them, and which had in no way entered into the matters complained of. An examination of the proof in the record fails to bring to light anything in the original suit or in its history or progress to fix fraudulent conduct upon any of the parties or attorneys. The proceedings under the original bill are very imperfect and irregular, most reprehensibly so. There are several of the heirs of Patterson B. West who are not made parties. There was, in other respects, a want of such orderly and systematic proceeding as is required in the conduct of litigation. Indeed, the *gravamen* of the bill seems to be that there was such a want of parties, process, and other steps as made the decrees in the case void, and yet it seeks to impeach contracts made after the decrees as fraudulent, as if the decrees had legitimate support. It is clear that if there be errors in the decrees, remedy was by appeal or by bill of review, if the term or terms had closed at which such decrees were rendered. If a dependent or auxiliary bill were permitted to remedy errors or alleged errors in decrees and judgments there would scarcely ever be an end of litigation in many cases. Now, if, as this bill alleges, the decrees were void for the want of proper parties or the necessary steps, they bind no one, and the persons in interest have a simple, complete, and adequate remedy at law. The case of *Lewis* v. *Cocks*, 23 Wall. 466–471, is decisive of this case. A judgment had been obtained against Cocks, and two of his houses and lots sold under execution to satisfy it. Service had been made, not on Cocks, but upon his agent. The purchaser at the execution sale mortgaged the property, and it was sold under the mortgage and purchased by Lewis, and Cocks filed his bill in equity to have his property reconveyed to him upon the grounds (1) that the court had no authority to render the judgment, (2) that there was no legal service upon Cocks, (3) that there had been fraud upon the part of the purchaser at execution sale. There was no fraud proven, and the court was held to have been competent to render the judgment, and the case turned upon the want of service, and the court says:

."If the bill alleged only the nullity of the judgment under which the premises were sold, by reason of the non-service of the original process in the suit, wherefore the defendant had no day in court, and judgment was rendered against him by default, and upon those grounds had asked a court of equity to pronounce the sale void, and to take the possession of the property from Izard and give it to the complainant, could such a bill be sustained? Such is the case before us. There is nothing further left of it, and there is nothing else before us. Viewed in this light, it seems to be an action of ejectment in the form of a bill in chancery. According to the bill, excluding what relates to the alleged fraud, there is a plain and adequate remedy at law, and the case is peculiarly one of the character where for that reason a court of equity will not interpose. This principle in English equity jurisprudence is as old as the earliest period in its recorded history. Spence, Eq. Jur. 408, note *b;* Id. 420, note *a.* The sixteenth section of the judiciary act of 1789, (1 St. at Large, 82,) enacting ' that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law, ' is merely declaratory, and made no change in the pre-existing law. To bar equitable relief the legal remedy must be equally effectual with the equitable remedy as to all the rights of the complainant. Where the remedy at law is not ' as practical and efficient to the ends of justice and its prompt administration ' the aid of equity may be invoked; but if, on the other hand, ' it is plain, adequate, and complete, ' it must be pursued. *Boyce* v. *Grundy,* 3 Pet. 215. In the present case the objection was not made by demurrer, plea, or answer, nor was it suggested by counsel; nevertheless, if it clearly exists, it is the duty of the court *sua sponte* to recognize it and give it effect. *Hipp* v. *Babin,* 19 How. 278; *Baker* v. *Biddle,* Bald. 416. It is the universal rule of courts of equity to dismiss the bill if it be grounded upon a mere legal title. In such case the adverse party has the constitutional right to trial by jury. *Hipp* v. *Babin,* 19 How. 278. * * . * In the present case the bill seeks to enforce ' a merely legal title. ' An action of ejectment is an adequate remedy. The question touching the service of process can be better tried at law than in equity. If it be desired to have any rulings of the court below brought to this court for review they can be better presented by bills of exception and a writ of error than by depositions and other testimony and appeal in equity."

This long quotation is justified by the appropriateness of the decision to the case in hand. The bill will be dismissed, with costs, and without prejudice. The following decisions are referred to in regard to the principles governing dependent or auxiliary bill: *Dunn* v. *Clarke,* 8 Pet. 1; *Dunlap* v. *Stetson,* 4 Mason, 349; *Freeman* v. *Howe,* 24 How. 450; *U. S.* v. *Throckmorton,* 98 U. S. 61–71; *Krippendorf* v. *Hyde,* 110 U. S. 279, 4 Sup. Ct. Rep. 27.