### SOUTHERN PINE CO. v. HALL.

(Circuit Court of Appeals, Fifth Circuit. November 20, 1900.)

No. 815.

1. JURISDICTION OF FEDERAL COURTS—SUITS IN EQUITY—EQUITABLE REMEDY GIVEN BY STATE STATUTE.

A state statute which enlarges equitable rights will be enforced and administered in the United States courts in all cases where its enforcement and administration do not conflict with the constitutional right of a party to a jury trial; and such a court has jurisdiction of a suit to quiet title to land, although the complainant is not in possession, where such suit is authorized by a state statute, and it appears from the record that the defendant is not in possession, so that an action in ejectment would lie.

2. PUBLIC LANDS—DISPOSITION OF SWAMP LANDS BY STATE—CONSTRUCTION OF MISSISSIPPI STATUTE.

By Act April 8, 1871 (Acts Miss. 1871, pp. 482–487), the legislature of Mississippi chartered the Pearl River Improvement & Navigation Company, which was authorized to receive from the state patents for certain swamp lands on its filing in the office of the secretary of state, within 60

days, a bond in the sum of $50,000, "with two or more good securities, * * * to be approved by the governor." Such bond was to secure to the state a compliance by the company with the provisions of the act requiring it to expend the value of the lands in making improvements in the navigation of Pearl river, and the governor was empowered, in case the company failed to comply with such provisions, to "commence suit on bond of said company." A bond was filed, in all respects as required, signed by four obligors, but not signed by the company. Such bond was approved by the governor, and patents were issued to the company for the lands, which it disposed of to others, and they were thereafter taxed by the state. Two years later the legislature, by an act then passed, recognized that the lands had been patented to the company "in compliance with the act of incorporation." *Held* that, there being no express provision requiring the company to sign the bond, and such signature being unnecessary to bind it, and the bond filed having been recognized as sufficient by both the executive and legislative departments of the state, it must be held to have been a substantial compliance with the act, and to have authorized the conveyance to the company of the lands.

**3.** Federal Courts—Construction of State Statute—Following State Decision.

A federal court will exercise an independent judgment as to the construction of a state statute in a case involving rights acquired thereunder before it had received a construction by the state courts, notwithstanding it has since been construed by such courts.

Appeal from the Circuit Court of the United States for the Southern District of Mississippi.

This case was tried in the circuit court on the following agreement, signed and filed September 2, 1898:

"It is hereby agreed, as a matter of fact, upon the submission of this cause by the undersigned solicitors, respectively, for complainant and defendant and cross complainant and respondent, that all technical matters in respect to pleadings and proceedings shall be waived; that the matters alleged in the cross bill shall be deemed to be facts in issue without the necessity of a formal answer hereto; and that the affirmative matters alleged in the answer to the original bill shall be deemed as being put at issue without a replication. It is further agreed, as matter of fact, that the lands in controversy were donated to the state of Mississippi, as stated in the original bill and answer, as swamp and overflowed lands. It is further agreed that whatever title was acquired from the state of Mississippi by the corporation designated as the Pearl River Improvement & Navigation Company came by regular conveyances to the defendant herein to the original bill. It is further agreed that if the patent made by the governor and secretary of state to said corporation, together with the subsequent acts of the legislature and the other facts herein recited, was insufficient to pass the title, and that the title remained in the state, and that the state was not estopped to thereafter assert title, then that the complainant in the original bill has duly acquired said title through persons who purchased the same of the state, as alleged in the original bill. It is further agreed that the only bond attempted to be furnished by or on behalf of said corporation under an act of the legislature entitled 'An act to incorporate the Pearl River Improvement Company and Navigation Company and for other purposes' (Acts 1871, pp. 482–487), which became a law on the 8th day of April, A. D. 1871, is that set forth in the report of the case of Hardy v. Hartman, 65 Miss. 506, 4 South. 545, and that the said copy shall be deemed and treated as having been read in evidence as the original bond; that said bond was filed by the Pearl River Improvement & Navigation Company in the office of the secretary of state prior to May 12, 1871. It is further agreed that said bond was by the governor approved on May 12, 1871, as the bond required under said act, and thereupon a patent was issued under said act in the name of the state, as otherwise provided by said act, to said company, which said patent was issued under the great seal of the state, signed by the governor and countersigned by the secretary of state, upon the 7th day of June, 1871. It

is further agreed that after the patent was issued to the Pearl River Company as above stated, and on, to wit, the 20th day of November, 1872, the said company sold and conveyed said lands to M. S. Baldwin for a sufficient and valuable consideration in cash then paid by him; that said Baldwin had no actual notice of the nature or character of the bond filed, but bought the same upon the faith of the state's patent exhibited to him before and at the time of the purchase, and upon the advice of counsel learned in the law that said title was good, and that said patent vested same in said Pearl River Company; that thereafter, on, to wit, the 17th day of April, 1873, said Baldwin sold and conveyed said lands to Israel Hall, who on the 5th day of November, 1874, conveyed to defendant, his wife; that said Hall paid to said Baldwin for said lands a full and valuable consideration, to wit, the equivalent of $40,000 in cash; that said Hall had no actual notice of the nature or character of the bond filed by the Pearl River Company, but bought said lands upon the faith of the patent from the state to the Pearl River Company, and the deed from such company to Baldwin, which said patent and deed were exhibited to him before and at the time of said purchase, and upon the advice of counsel learned in the law that the said patent and deed vested the title in said Baldwin; that said lands shortly after said sale to the Pearl River Company were listed for state and county taxation, and that defendant and her grantors have paid the taxes thereon from time same were listed up to the institution of this suit; that said patent to Baldwin, and the deeds from Baldwin to Hall, and Hall to defendant, were all duly recorded in the proper office shortly after execution, and long before the issuance of the patents under which complainant in the original bill claims. It is further agreed that if the court shall hold, in the above state of facts, that defendant, Olivia B. Hall, by virtue of said patent and conveyances, and with the facts above recited, and by virtue of said act of April 8, 1871, and the other acts of the legislature of the state "of Mississippi passed in relation to the subject-matter, became, was, or is vested with the title to said lands, then a decree shall be rendered by this honorable court dismissing the original bill and canceling the title of complainant therein. If, however, upon the record above made, and upon the several acts of the legislature in reference to the subject-matter in dispute, the court shall find that the said Olivia B. Hall has no title to said land, then a decree shall be entered in favor of complainant in the original bill, as prayed therein, leaving to be determined only the question of charging the lands in controversy with the payment of taxes paid out by defendant and cross complainant, which matter is to be submitted to a master after the determination of the other issues. It is further agreed that complainant is not to be prejudiced by describing the document ,copied into said report of case of Hardy v. Hartman as a bond; the purpose being to submit to the court the question whether or not, under all the facts above recited, and the law in reference thereto, said bond was the bond required by said act, whether title passed by the issuance of said patent, and, if not, whether the state was, by the facts recited, the approval of said bond, and various laws thereafter enacted, estopped to thereafter assert title to said lands. It is further agreed that the lands in controversy are of the value of ten thousand dollars and upward. It is further agreed that nothing was done by the Pearl River Improvement & Navigation Company in furtherance of the purpose of public improvement mentioned in the act of 1871, and that neither said company, nor any one on its behalf, ever returned the patents it received, and that no money was paid as provided for by the act of April 19, 1873, to the state by said company, nor by any other person. It is further agreed that, if the same can be of any avail, defendant and cross complainant shall be deemed and treated as having pleaded specially the said act of April 19, 1873. In case the court shall be of opinion that the act of 1873, as published, cut off the title of the state as to the lands conveyed by said company before that date, complainant [reserves] the right to show that in point of fact said act, as published, was never a law [of] the state.

"T. M. Miller & G. W. Ellis,
          "Solt'rs for Compl't.
"E. J. Bowers,
          "Solicitor for Def't and Cross Compl't."

The sections of the act of the legislature of Mississippi passed March 22, 1871, which relate to the bond to be given under the act, are as follows:

"Sec. 5. Be it further enacted, that said company shall expend in the improvement of said river and in the navigation thereof, ten per centum of the first year, of the value of the property referred to in the preceding section, and that the whole value of said property shall be expended for the purpose specified in this charter within five years from the passage of this act. That said company shall, within sixty days after the passage of this act, file in the office of the secretary of state a bond in the sum of fifty thousand dollars, with two or more good securities, who shall make oath that they are worth the penalty of the bond over and above all liabilities and exemptions, which securities shall reside in this state, to be approved by the governor, and upon the approval and filing of said bond, said secretary of state shall from time to time, as demanded by said company, make out a patent or patents for said land to said company, which patent or patents shall be signed by the governor and countersigned by the secretary of state, which patents shall vest the fee-simple of said lands in this company: provided, nothing in this section shall be construed as to require patents to issue for any land heretofore sold to legal purchasers: provided further, that no lands shall be disposed of or sold by said company for a less sum than twenty-five cents per acre."

"Sec. 8. Be it further enacted, that the governor may at any time require the president of said company to make report to him of the amount of money expended in the improvement of Pearl river, which reports shall be made under oath, and shall set forth all particulars relating to said improvement; and when it becomes apparent to the governor that said company has not complied with the conditions of this act, and that they are not appropriating money derived from the sale of the land, as hereinbefore provided, it shall become his duty to commence suit on bond of said company, in his own name, for the use of said Pearl River district."

The bond which was given under the act is as follows:

"Pearl River Improvement and Navigation Company.

"Know all men by these presents, that we, Walter P. Billings, Samuel A. Vose, A. Warner, O. C. French, are held and firmly bound unto the state of Mississippi in the sum of fifty thousand dollars, the payment of which, well and truly to be made, we bind ourselves, our heirs and executors, jointly and severally, by these presents. The condition of the above bond is such that whereas, by an act of the legislature of the state of Mississippi entitled 'An act to incorporate the Pearl River Improvement and Navigation Company, and for other purposes,' a company was incorporated, called the Pearl River Improvement and Navigation Company, which company is charged with certain duties and bound by certain conditions in said act specified: Now, if said company will well and truly perform, or cause to be performed, all the acts and things mentioned in said act of incorporation, and comply with all the terms and conditions in accordance with the tenor and meaning of said act, then this bond to be void, otherwise to remain in full force and effect.

"In witness whereof, said persons have hereunto set their hands and seals this 7th day of April, 1871.        W. P. Billings.   [Seal.]
                                            "By S. A. Vose, His Attorney.
                                    "S. A. Vose.      [Seal.]
                                    "A. Warner.      [Seal.]
                                    "O. C. French.   [Seal.]

"Approved May 12th, 1871.
        "J. L. Alcorn, Governor."

T. C. Catchings and T. M. Miller, for appellant.
E. J. Bowers and D. B. H. Chaffe, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This is a suit in equity to quiet the title of the plaintiff to a large tract of swamp or overflowed lands in Mississippi against the claim of the defendant to an adverse interest in the premises. The plaintiff seeks to have the defendant's pretended titles produced and canceled. The defendant, after answering, filed a cross bill seeking to have the plaintiff's alleged titles canceled and her right to the lands established. The court decided in favor of the defendant and cross complainant, and the plaintiff appeals to this court.

The first question raised is as to the jurisdiction of the circuit court. The original bill was filed in the chancery court of Pearl River county, Miss. The plaintiff was a Mississippi corporation, and the defendant a citizen of Michigan. The value of the land exceeded $2,000. On petition of the defendant the case was duly removed from the state court to the circuit court of the United States for the Southern district of Mississippi. The plaintiff moved to remand the case to the state court because the circuit court "has no jurisdiction in the premises, there being no ground of equity jurisdiction stated upon the face of the bill of complaint, save under a statute of the state of Mississippi, which cannot enlarge the equity powers of the federal courts." The court overruled the motion, and its order is assigned as error. The statute referred to in the motion is section 500 of the Annotated Code of Mississippi of 1892, and is as follows:

"Sec. 500. When a person, not the rightful owner of any real estate, shall have any conveyance or other evidence of title thereto, or shall assert any claim or pretend to have any right or title thereto which may cast doubt or suspicion on the title of the real owner, such real owner may file a bill in the chancery court to have such conveyance or other evidence or claim of title cancelled, and such cloud, doubt or suspicion removed from said title, whether such real owner be in possession or not, or be threatened to be disturbed in his possession or not, and whether the defendant be a resident of this state or not; and any person having the equitable title to land may, in like cases, file a bill to divest the legal title out of the person in whom the same may be vested, and to vest the same in the equitable owner."

The seventh amendment to the constitution of the United States declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." This amendment is a limitation on the equity jurisdiction of federal courts. If the legislation of states, providing for the trial of common-law cases in equity, was binding on federal equity courts, this amendment of the constitution could be made useless. Such state statutes do not control the federal courts. A state statute, therefore, which confers jurisdiction of common-law cases on state equity courts, thus dispensing with trials by jury, will not be administered in federal courts of equity. Scott v. Neely, 140 U. S. 106, 111, 11 Sup. Ct. 712, 35 L. Ed. 358; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 37 L. Ed. 804. It is well settled, however, that an enlargement of equitable rights may be administered as well by the United States courts as by state courts. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; In re Broderick's Will, 21 Wall. 503, 520, 22 L. Ed.

599; Greeley v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 24, 39 L. Ed. 69; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. Courts of equity from time immemorial have exercised jurisdiction to cancel spurious titles and to remove clouds upon the title of real estate, thus preventing anticipated wrongs or mischiefs. To maintain such suit it was generally necessary for the plaintiff to be in possession of the real estate, and that his title should have been established at law, or founded on undisputed evidence or long-continued possession. The statute quoted distinctly relates to equitable rights. It enlarges such rights. It dispenses with the necessity for the plaintiff's possession. This enlargement of equitable rights will be administered in the United States courts. Holland v. Challen, 110 U. S. 15–26, 3 Sup. Ct. 495, 28 L. Ed. 52. The bill in the case at bar contains no specific averment as to the actual possession of the real estate. It alleges title in the plaintiff, but not possession. It does show, however, that the defendant is not in actual possession of the property. The lands are shown to be in Mississippi. She is shown to reside in Michigan. She is sued and served as a nonresident of Mississippi. No tenants are shown to be in possession. It does not appear from the record that a remedy by the action of ejectment was available to the plaintiff. An examination of the cases will show that the jurisdiction in equity in the United States courts to enforce statutes enlarging equitable remedies depends on the question whether or not the enforcement of the statute deprives a party of the constitutional right of trial by jury. Section 723 of the Revised Statutes of the United States, and the law as administered without regard to this statute, forbid equity to take jurisdiction where there is a plain and adequate remedy at law. If the record in this case showed that the defendant was in actual possession of the lands, so that an action of ejectment could have been brought against her for the lands, then it would appear that there was an adequate remedy at law, and jurisdiction in equity would not exist in the United States courts, although the statute conferred such jurisdiction on the Mississippi state courts. Whitehead v. Shattuck, 138 U. S. 146, 147, 11 Sup. Ct. 276, 34 L. Ed. 873. The result of the decision of the supreme court is that a state statute which enlarges equitable rights will be enforced and administered in the United States courts in all cases where its enforcement and administration do not conflict with the right of the parties to a jury trial. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Hipp v. Babin, 19 How. 271, 15 L. Ed. 633; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Grand Chute v. Winegar, 15 Wall. 373, 21 L. Ed. 174; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451. See, also, Harding v. Guice, 25 C. C. A. 352, 80 Fed. 162; Green v. Turner (C. C.) 98 Fed. 756. To review and quote from these cases would serve no useful purpose. That work has already been done by Judge Taft, speaking for the United States circuit court of appeals for the Sixth circuit, in Grether v. Wright, 23 C. C. A. 498, 75 Fed. 742. We will, however, quote the following from an opinion of the supreme court delivered by Mr. Justice Brown:

"This court has held in a multitude of cases that where the laws of a particular state gave a remedy in equity, as, for instance, a bill by a party in or out of possession to quiet title to lands, such remedy would be enforced in the federal courts, if it did not infringe upon the constitutional rights of the parties to a trial by jury." Greeley v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 28, 39 L. Ed. 75.

It is conceded that the bill makes a case within the jurisdiction of the Mississippi chancery court, for the statute quoted dispenses with the necessity of the plaintiff's possession. As it appears that the defendant was not in possession of the lands, and that the plaintiff has no adequate remedy at law, and that the defendant is not deprived of the right of a trial by jury, there is no valid objection to the jurisdiction of the United States circuit court.

The other assignments of error relate to the merits of the case.

On the 3d of February, 1858, the lands in controversy were patented by the United States to the state of Mississippi. The litigation in this case is to settle the question as to the ownership of these lands; it being agreed that they are owned either by the appellant, the Southern Pine Company, or the appellee, Olivia B. Hall. The parties both deraign title from the state of Mississippi. On April 8, 1871, the legislature of Mississippi chartered the Pearl River Improvement & Navigation Company, hereinafter called the "Pearl River Company." This company was authorized to receive from the governor and the secretary of state of Mississippi patents for the land. On June 7, 1871, the secretary of state and the governor of Mississippi issued a patent for the lands to the Pearl River Company, which was duly recorded in the counties where the lands lie. The Pearl River Company on November 20, 1872, conveyed the lands, for a valuable consideration, to Matthew S. Baldwin. Baldwin on the 17th day of April, 1873, sold and conveyed the lands to Israel Hall for a consideration of $40,000. On November 5, 1874, Hall conveyed the lands to his wife, the appellee. The patent and all the deeds were duly recorded. Soon after the patent issued to the Pearl River Company the lands were listed for taxation, and the appellee and her vendors have paid taxes on them to the state of Mississippi since that time to the beginning of this suit. On the 7th of December, 1893, the state of Mississippi issued other patents to the lands in question. The appellant, the Southern Pine Company, by several conveyances has become the owner of whatever right and title these patentees obtained from the state. It will be seen by this statement that the appellee claims under the prior grant. The act of 1871 which incorporated the Pearl River Company required it within 60 days after the passage of the act to deposit with the secretary of state of Mississippi "a bond in the sum of $50,000, with two or more good securities, who shall make oath that they are worth the penalty of the bond, over and above all liabilities and exemptions, which securities shall reside in this state, to be approved by the governor." On the filing of such bond the act provided that patents were to be issued by the governor and the secretary of state to the Pearl River Company, which patents were to vest the fee-simple title to the lands in the company. Before the patents were issued the Pearl River Company

filed a bond in the proper office in the sum of $50,000, which was duly approved by the governor of Mississippi on May 12, 1871. The bond was not signed by, and did not purport to bind, the Pearl River Company. The bond is in due form, and is signed by four obligors. The objection urged to the bond by the appellant is that it is not the bond of the company. It is claimed that the legislature, in requiring the Pearl River Company to file "a bond  *  *  *  with two or more good securities," meant that it should be bound on the bond as principal. It is also said that the act provides that in "certain contingency it is the duty of the governor to commence a suit on the bond of said company." These expressions in the bond, it is said, show that the act required the filing of a bond executed by the Pearl River Company as a condition precedent to the issuance of the patent. The act does not say that the bond is to be executed by the Pearl River Company. The language used is that it shall "file in the office of the secretary of state a bond in the sum of $50,000, with two or more good securities, who shall make oath that they are worth the penalty of the bond, over and above all liabilities and exemptions, which securities shall reside in this state, to be approved by the governor." The purpose and intention of the legislature was to secure indemnity or security to the amount of $50,000. That was the leading purpose and thought. The makers of the bond were required to make oath that they were worth the amount of the bond. If it became "apparent to the governor that the said company had not complied with the act,  *  *  *  it shall become his duty to commence suit on bond of said company." These provisions make it clear that the purpose of the bond was indemnity or security to the state. The company would be liable, with or without bond, to suit for failure to perform the trust created by the act. It was liable to such suit whether it had been required to give bond or not. The state lost nothing in the way of security by the failure of the company to join in the execution of the bond. A solvent bond for the required sum being given, the purpose of the legislature was complied with. The bond was accepted by the governor as a satisfactory compliance with the act. This contemporaneous construction of the act by the executive of the state, who was vested with the authority by the legislature to approve the bond, is entitled to consideration and respect. In Edward's Lessee v. Darby, 12 Wheat. 207, 210, 6 L. Ed. 604, the supreme court said:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."

The bond being approved and the patents issued, the state received taxes on the lands from the patentee and those claiming under the patentee for a period of over 20 years. On April 19, 1873, the legislature, by an act of that date, formally recognized that "the lands had been patented to said company in compliance with the act of incorporation." Acts Miss. 1873, p. 120. It appears, therefore, that both the executive and legislative branches of the state government have recognized the sufficiency of the bond to authorize the issuance of the

patent under which the appellee claims. It does not appear clearly from the language of the act that it was intended by the legislature that the Pearl River Company should sign the bond. But, if it be conceded that such was the meaning of the act, it is a matter of minor importance. The important and essential purpose was to secure an indemnity by bond for $50,000. A good bond for that sum was given and accepted. After the acceptance of the bond and its approval by the governor, and the subsequent ratification of the governor's action by the legislature, the courts should be reluctant to disturb titles acquired in good faith by purchasers for value who relied on the patents issued by the governor and the secretary of state.

The case of Hardy v. Hartman, 65 Miss. 504, 4 South. 545, is relied on by the appellant. The court in that case said it did "not appear from the record that any patent signed by the governor and countersigned by the secretary of state was ever issued to the company for the land in question. * * *" The observation, therefore, at the conclusion of the case, that if a patent had issued it would have been void, must be regarded as an obiter dictum. This case, we think, cannot be held a judicial construction of the statute on the point here involved. If it should be so considered, although we would have great respect for the conclusion of that able and impartial court, we should be required, on the facts of this case, to exercise an independent judgment in the construction of the statute in question. The appellee in this case having acquired the rights here asserted before the decision of the supreme court of Mississippi just cited was rendered, she is entitled to invoke the independent judgment of this court as to the proper construction of the statute. In Bartholomew v. City of Austin, 29 C. C. A. 568, 85 Fed. 359, this court (Judge Pardee delivering the opinion) held:

"Where contracts or transactions have been entered into, and rights have accrued thereunder, before state laws applicable to them have been construed by the state courts, the federal courts will place their own interpretation on such laws, though the state courts have since adopted a different construction."

This view is fully sustained by the supreme court. In Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 21, 27 L. Ed. 365, the court said:

"When contracts and transactions have been entered into, and rights have accrued thereon, under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued."

The appellee has urged on our attention the fact that her vendor purchased and paid full value for the lands without notice of defect, if any, in the bond given by the Pearl River Company, and that she should be protected as a bona fide purchaser for value, without notice. It is also claimed that the state was by the facts estopped to issue the second patent for the lands. As we have determined that the bond given was a substantial compliance with the act of the legislature, we do not deem it necessary to examine these last-named contentions. The decree of the circuit court is affirmed.