## KELLOGG et al. v. SCHAUEBLE.

(District Court, S. D. Mississippi, Jackson Division. May 2, 1921.)

No. 133.

1. **Equity ⊙⊐427(3)—General prayer does not broaden relief sought beyond facts alleged.**

Where a bill alleged that a deed was procured by undue influence and that the grantor was without legal capacity to execute it, and specifically prayed that the deed be canceled as a cloud on title of the complainants, a prayer for general relief does not operate to enlarge or broaden the relief sought beyond what the facts alleged in the bill show complainants have the right to ask.

2. **Removal of causes ⊙⊐107(4)—Possible amendments cannot be considered in determining whether federal court can give relief sought.**

On motion to remand a cause to the state court on the ground that the United States court cannot give the relief which the state court could give, the court cannot consider that the bill, which merely sought to cancel a deed as a cloud on title, might be amended to recover possession of the premises and mesne profits, which would be permissible under the state practice.

3. **Removal of causes ⊙⊐11—Bill held to state cause for equitable relief, which can be administered by United States court.**

A bill which merely alleged that defendants were in possession under a deed from the complainant's ancestor, procured from him by undue influence, when he did not possess sufficient capacity to make the deed, without alleging facts entitling complainants to recover possession of the premises and mesne profits, or specifically praying for such relief, does not seek relief which cannot be granted by the United States court of equity, and therefore such suit may be removed to the United States court, if the requisite diversity of citizenship existed.

4. **Courts ⊙⊐352—Legal relief may be given without sending case to law side.**

Where the suit is such as involves a matter ordinarily equitable in its nature, a court of equity, having jurisdiction, can determine questions ordinarily determinable at law, such as questions of possession and mesne profits, and the mental capacity of a grantor, under equity rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv), without sending the case or questions to the law side of the court.

5. **Quieting title ⊙⊐49—Equity has jurisdiction to cancel voidable deeds as clouds on title.**

Where deeds affecting title to land are merely voidable, equity can take jurisdiction of the entire case, and not only cancel the instruments as clouds upon the title, but can also decree possession, rents and profits, and compensation for improvements and taxes.

6. **Quieting title ⊙⊐12(3)—Equity can direct cancellation of void deed to person in possession, if defect does not appear on face.**

Where a deed to a person in possession of land is void for some reason which does not appear on the face of the deed, or on indisputable facts, such as the mental incapacity of the grantor to execute the deed, equity can order the deed to be delivered up and canceled as a cloud on the title.

7. **Equity ⊙⊐49—Enlargement of common-law remedy, so as to afford adequate relief, does not deprive equity of existing jurisdiction.**

Where equity has acquired jurisdiction to grant relief in a class of cases because there is no adequate remedy at law, the enlargement of a legal remedy, so as to afford adequate relief, does not deprive equity of its existing jurisdiction.

⊙⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Courts** ⊝262(2)—**Federal equitable jurisdiction depends on adequacy of legal remedy when first Judiciary Act was adopted.**

Under Judiciary Act 1789, § 16 (Comp. St. § 1244), providing that suits in equity shall not be sustained in any case where plain, adequate, and complete remedy can be had at law, the jurisdiction of the United States courts as courts of equity is to be determined by the adequacy of the remedies at law at the time the original Judiciary Act was adopted.

**9. Courts** ⊝262(2)—**Common-law ejectment was not adequate remedy against void deed to grantee in possession.**

The common-law remedy of ejectment as it existed at the time of the adoption of the Judiciary Act of 1789 merely determined the right to possession of the property, not the title thereto, and was therefore not adequate to protect the heirs of a grantor against a deed by the ancestor to a grantee who had gone into possession, which was void for mental incapacity, so that the United States court in equity could grant relief in such cases, though the state Constitution and statutes had since enlarged the remedy of ejectment, so as to determine the right to the property.

**10. Removal of causes** ⊝102—**Want of jurisdiction in equity does not require remand of equitable suit to remove to federal court.**

Where a suit in equity under the state procedure was removed to the federal court for diversity of citizenship, the fact that the federal court in equity would have no jurisdiction to grant the relief sought does not require a remand of the case, or its dismissal, but it will be transferred under rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) to the law docket.

In Equity. Suit by Charlotte F. Kellogg and others against Paul Schaueble, instituted in the chancery court of the state and removed to the United States District Court on petition of defendant. On motion by complainants to remand to the state court. Motion overruled.

E. L. Brown and Barbour & Henry, all of Yazoo City, Miss., for complainants.

Barnett & Perrin, of Yazoo City, Miss., Boothe & Pepper, of Lexington, Miss., and Brunini & Hirsch, of Vicksburg, Miss., for defendant.

HOLMES, District Judge. This cause was instituted in the chancery court of the state, and on petition of the defendant removed to this court, where a motion to remand was duly made. Briefly put, the bill alleges that the complainants are the sole heirs of Rev. Joseph Kellogg, who died intestate as to the lands in controversy, and who was, at the time of his death, the owner in fee simple of said lands, unless he had alienated them by the deeds assailed as void, because procured by the defendant by the exercise of undue and improper influences, which prevented them from being the result of the free and voluntary act of said decedent, and because at the time of their execution "the said decedent was without that mental capacity legally necessary to enable him to alienate said properties, or any part thereof, or to in any manner bind himself by deed."

I shall not enter upon a metaphysical discussion of the consistency of the two allegations. Whether or not every influence to alienate property exerted upon the mind of one without mental capacity legally necessary to enable one to do it might be denominated an undue and

improper influence is more a question of morality than of law, and might depend in large degree upon the motive of the actor and the ends to be subserved in obtaining the conveyance. If the pleader means to aver that because of undue and improper influences exerted upon the mind of the decedent he was rendered at the time of the execution of the deeds without sufficient mental capacity legally necessary to enable him to alienate the property, the character of the influences becomes highly important; but if the allegation of mental incapacity is absolute, and is intended to stand separate and alone, independent of undue influence, then this allegation, if established, would render the character of influences immaterial. I believe the same result should be reached, regardless of which construction is adopted.

[1, 2] The remedy sought by the specific prayer of the bill is that the two deeds "be canceled, annulled, and held for naught as a cloud upon the title of the complainant in and to said lands." This relief is purely equitable in its nature, and is the only relief the complainants are entitled to under the facts stated. The general prayer does not aid to enlarge or broaden the relief sought beyond what the facts set up in the bill show the plaintiff has the right to ask. In determining whether the relief sought is of a nature that a federal District Court is competent to administer, on the motion now under consideration, this court will look to the face of the complaint, and, upon the facts as there set up, decide what relief should be granted the complainants. The bill is silent on the question of possession and mesne profits, and this court cannot be expected to anticipate evidence or amendments which will enlarge the scope of the prayer for general relief, so as to embrace all the legal and equitable remedies afforded by the Mississippi statute. The general prayer cannot broaden relief beyond the pleadings at this stage of the case. Simkins, A Federal Suit in Equity, p. 283.

[3] There is nothing in the bill to indicate that the complainants were seeking in a state court to avail themselves of blended remedies afforded by a state statute, which a federal court could not administer. The only specific relief asked is the cancellation of two void or voidable deeds, and under the facts set forth this is the only relief which complainants are entitled to under the general prayer. Taking to be true every fact alleged, it does not appear that the complainants need, desire, or are entitled to any other or further relief than the delivery up and cancellation of void or voidable instruments, and a federal court of equity is as fully competent to administer this relief in a proper case as a Mississippi chancery court. The bill does not show a state of facts, as in Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804, where the plaintiff, under a state statute, was seeking legal and equitable relief which a federal court could not administer in a suit in equity, because the defendant was entitled to a jury trial on the legal issues raised, and the equitable relief sought was premature, until a judgment had been obtained at law and execution returned nulla bona.

This opinion might well end here, and, strictly speaking, should do so; but, as the answer sets up that the defendant is in possession, which was admitted in open court in the argument, and as counsel on both sides have argued orally and in briefs other contentions, which they deem presently before the court for determination, and which, if not necessary for decision on the motion to remand, will be raised immediately by other motions, I think it proper for a trial court, for the sake of expedition, to set forth its views on the other questions so earnestly pressed.

It is conceded that this is a controversy between citizens of different states and that this court has jurisdiction of the subject-matter and of the parties. But it is contended that the complainants have asserted two causes of action—one grounded upon the wrongful possession of the defendant; the other grounded upon the casting of a cloud upon the title of complainants by the outstanding deeds. It is asserted that the remedy to recover possession is adequate and complete at law by ejectment, and that the remedy to remove clouds is adequate and complete in equity; that there are two reasons why the possession was wrongful, and two reasons why the deeds constituted clouds. It is asserted that section 160 of the Mississippi Constitution creates one blended remedy in equity for the two provided by the separate jurisdictions maintained in the federal court. To state the contention in counsel's own words:

"The [Mississippi] Constitution prescribes a bill in equity as a remedy compounded of an action of ejectment and a bill to remove clouds—one remedy, where there had been two required—one remedy 'blending,' or 'commingling,' or 'mixing' the two. The one remedy covers (1) recovery of possession; (2) recovery of rents and profits; (3) allowance of compensation for improvements and taxes; and (4) removing clouds upon title."

It is insisted that, as a federal court of equity cannot give the complainants this full relief, the cause should be remanded, so as not to deprive the complainants of their rights under the state constitutional provision. Without assenting to the conclusion of counsel for complainants, I shall proceed to an examination of the grounds of their major premise, namely, that this court is incompetent to grant full relief.

[4] In the outset, it may be observed, counsel concedes that in so far as the bill seeks to cancel the deeds on the ground of undue influence the suit is equitable in its nature, and the suggestion naturally arises that, if this is a suit for any reason equitable in its nature, then, when matters ordinarily determinable at law arise, such as questions of possession and mesne profits, and whether the deed is void for mental incapacity, under equity rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv), such matters are required to be determined in the suit in equity according to the principles applicable, without sending the case or questions to the law side of the court. Equity rule 23 is as follows:

"If in a suit in equity a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court."

As stated by Mr. Justice Pitney in Shaffer v. Carter, 252 U. S. at page 48, 40 Sup. Ct. at page 224 (64 L. Ed. 445):

"On this ground, at least. resort was properly had to equity for relief; and since a court of equity does not 'do justice by halves,' and will prevent, if possible, a multiplicity of suits, the jurisdiction extends to the disposition of all questions raised by the bill. Camp v. Boyd, 229 U. S. 530, 551, 552; McGowan v. Parish, 237 U. S. 285, 296."

It therefore may be regarded as established beyond controversy that equity, if obliged to take cognizance of a cause for any purpose, will ordinarily retain it for all purposes, even though this requires it to determine purely legal rights that would not otherwise be within the range of its authority.

[5] The contention proceeds upon the theory that if the deeds are void for mental incapacity, and not voidable merely, then the complainants would be left to their remedy at law in ejectment. It is clear that, if the deeds are merely voidable, equity will take jurisdiction of the entire case and all incidental legal questions arising in connection with it, and will not only cancel the voidable instruments as clouds upon the title of the complainants, but will also decree possession, rents and profits, and compensation for the improvements and taxes. Allore v. Jewell, 94 U. S. 506, 24 L. Ed. 260.

I shall now proceed to an examination of the bill, with a view of showing that equity has concurrent jurisdiction with courts of law in cases where void deeds are valid upon their face. Let us accept the construction of the pleader that the bill alleges "absolute want of mental capacity, irrespective of health," and irrespective of undue influences.

[6] We have, then, the sole question as to whether equity will entertain a bill to cancel deeds made by a mental incompetent at the time of their execution when the defendant is in possession. Story's Equity Jurisprudence (14th Ed.) § 945, says:

"A question has often occurred how far courts of equity would or ought to interfere to direct deeds and other solemn instruments to be delivered up and canceled, which are utterly void and not merely voidable. The doubt has been in the first place whether, as an instrument utterly void is incapable of being enforced at law, it is not a case where the remedial justice to protect the party may not be deemed adequate and complete at law, and therefore where the necessity of the interposition of courts of equity is obviated; and, in the next place, whether, if the instrument be void and ought not to be enforced, the more appropriate remedy in a court of equity would not be to order a perpetual injunction to restrain the use of the instrument rather than to compel a delivery up and cancellation of the instrument."

After discussing the matter somewhat at length and citing numerous authorities in the notes, it concludes in section 950:

"In cases where the delivery up or cancellation of any deed or other instrument is sought on account of its being void, the old course used to be, if the validity of the instrument was contested, to direct an issue or a trial at law to ascertain the fact. But this, although the common practice, was a matter in the sound discretion of the court, as the determination of a jury upon the point was not indispensable. It was merely ancillary to the conscience of the court of equity when administering relief, and not strictly the right of the party. At present a different and more convenient course seems to prevail"

(which is clearly within the jurisdiction of the court), and that is for the court itself to decide the point, without sending the matter to be ascertained at law by a jury, unless it is satisfied from the contradictory character of the evidence or the want of clearness in the proofs that such a determination by a jury would be advisable."

Speaking of the jurisdiction of courts of equity and the mode of relief afforded by them, Blackstone says:

"The want of a more specific remedy than can be obtained in the courts of law gives a concurrent jurisdiction to a court of equity in a great variety of cases. * * * So of waste, and other similar injuries, a court of equity takes a concurrent cognizance, in order to prevent them by injunction. Over questions that may be tried at law, in a great multiplicity of actions, a court of equity assumes a jurisdiction, to prevent the expense and vexation of endless litigation and suits. In various kinds of frauds it assumes a concurrent jurisdiction, not only for the sake of a discovery, but of a more extensive and specific relief; as by setting aside fraudulent deeds, decreeing reconveyances, or directing an absolute conveyance merely to stand as security."

I take the following verbatim from the notes of Lewis' Blackstone:

"Where an instrument is void at common law, as being against the policy of the law, it belongs to the jurisdiction of equity to order it to be delivered up. 11 Ves. 535. In Mayor, etc., of Colchester v. Lowton, Lord Eldon says: 'My opinion has always been (differing from others) that a court of equity has jurisdiction and duty to order a void deed to be delivered up and placed with those whose property may be affected by it, if it remains in other hands.' 1 Ves. & B. 244."

In Allore v. Jewell, 94 U. S. 506, 24 L. Ed. 260, the court recognized the jurisdiction of courts of equity to cancel a deed by one mentally incompetent to execute it, or insane, in these words:

"It is not necessary, in order to secure the aid of a court of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed," etc. 94 U. S. 513 (24 L. Ed. 260).

I am here discussing the equitable jurisdiction of this court independently of the Mississippi statutory and constitutional provisions, which have enlarged the equitable rights, so as to dispense with the necessity of plaintiff's possession. See Southern Pine Co. v. Hall, 105 Fed. 84, 44 C. C. A. 363, where it is stated, citing numerous authorities, that such an enlargement of equitable rights may be administered in the courts of the United States, where the same does not conflict with the right of the parties to a trial by jury. Judge Shelby says (105 Fed. at page 89, 44 C. C. A. 368):

"If the record in this case showed that the defendant was in actual possession of the lands, so that an action of ejectment could have been brought against her for the lands, then it would appear that there was an adequate remedy at law, and jurisdiction in equity would not exist in the United States courts, although the statute conferred such jurisdiction on the Mississippi state courts. Whitehead v. Shattuck, 138 U. S. 146, 147, 11 Sup. Ct. 276, 34 L. Ed. 873. The result of the decision of the Supreme Court is that a state statute which enlarges equitable rights will be enforced and administered in the United States courts in all cases where its enforcement and administration do not conflict with the right of the parties to a jury trial. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Hipp v. Babin, 19 How. 271, 15 L. Ed. 633; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Grand Chute v. Winegar, 15 Wall. 373, 21 L. Ed. 174; Buzard v. Houston, 119

U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451. See, also, Harding v. Guice, 25 C. C. A. 352, 80 Fed. 162; Green v. Turner (C. C.) 98 Fed. 756. To review and quote from these cases would serve no useful purpose. That work has already been done by Judge Taft, speaking for the United States Circuit Court of Appeals for the Sixth Circuit, in Grether v. Wright, 23 C. C. A. 498, 75 Fed. 742. We will, however, quote the following from an opinion of the Supreme Court delivered by Mr. Justice Brown: 'This court has held in a multitude of cases that where the laws of a particular state gave a remedy in equity, as, for instance, a bill by a party in or out of possession to quiet title to lands, such remedy would be enforced in the federal courts, if it did not infringe upon the constitutional rights of the parties to a trial by jury.' Greely v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 28, 39 L. Ed. 75. It is conceded that the bill makes a case within the jurisdiction of the Mississippi chancery court, for the statute quoted dispenses with the necessity of the plaintiff's possession. As it appears that the defendant was not in possession of the lands, and that the plaintiff has no adequate remedy at law, and that the defendant is not deprived of the right of a trial by jury, there is no valid objection to the jurisdiction of the United States Circuit Court."

The above statement of Judge Shelby, that, if the record had shown defendant to be in possession, ejectment would have been an adequate remedy, is dictum, because later he says the record shows that defendant is not in possession, and the rule should be limited to cases where the instrument sought to be canceled is void upon its face as a matter of law or upon indisputable facts. Such was the character of instruments evidencing title in Whitehead v. Shattuck, supra. There it was alleged that the land entered and patented was at the time not subject to entry and patent; that the evidences of title were procured without legal right and in violation of law. The entire title of the defendant depended upon the patent, which as a matter of law was void upon its face or upon indisputable facts, and cancellation was unnecessary.

In the case of Hipp v. Babin, 19 How. 271, 15 L. Ed. 633 (which Judge Taft, in Grether v. Wright, 75 Fed. 748, 23 C. C. A. 498, calls the first and leading case on the subject and says is quoted in nearly all the others which have followed) there was no independent equity, no proper allegation that the plaintiffs were seeking cancellation, partition, discovery, or to avoid a multiplicity of suits.

The test here of the adequacy of the legal remedy is this: If the plaintiffs should bring ejectment and recover possession of the property and a judgment for mesne profits, would a court of equity afterwards sustain a bill by them in possession to decree cancellation and surrender up of the void deeds, and this would turn upon whether they were clearly void upon their face or upon indisputable facts, so that no mischief might come of their being outstanding. The rule is well stated in section 1377 of Pomeroy's Equity Jurisprudence, vol. 4. See, also, Pomeroy's Equitable Remedies, § 685.

[7] In the year 1789 the jurisdiction of equity to order void instruments to be delivered up and canceled was well established in cases where the instrument was a deed to land, and the subsequent cognizance of common-law courts, by giving a concurrent remedy in such cases, did not disturb the jurisdiction already acquired by the courts of equity. As stated by Mr. Pomeroy (volume 1, § 182):

"Whenever equity originally acquired jurisdiction over any particular subject-matter, right, or interest, because the law either did not recognize the existence of the right or interest, or could not furnish an adequate remedy for its protection, and the scope of the common law has since become enlarged, so that it now not only admits the particular primary right or interest to be legal, but also furnishes a legal remedy by its actions, which may even be adequate under ordinary circumstances, still the equitable jurisdiction is not in general thereby destroyed or lessened, although it is made to be concurrent, and although the special reasons for its continued exercise—namely, the inadequacy of the legal remedy—may no longer exist."

[8] The above principle is subject to this limitation: That if the scope of the common-law remedy had been enlarged at the time of the adoption of the Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73), then no suit in equity would lie. The sixteenth section of the Judiciary Act of 1789 (Comp. St. § 1244) provides:

"That suits in equity shall not be sustained * * * in any case where plain, adequate and complete remedy may be had at law."

But this is merely declaratory of the pre-existing rule, and does not apply where the remedy is not "plain, adequate and complete," or, in other words, "where it is not as practical and efficient to the ends of justice and to its prompt administration, as the remedy in equity." It therefore becomes highly important to inquire whether the equitable jurisdiction to cancel void deeds previously acquired was taken away by said section 16, and this turns upon whether the growth and development of the action of ejectment at that time had progressed sufficiently to afford the complainant a plain, adequate, and complete remedy at law. Let us, then, examine the nature and effect of a judgment in ejectment, to ascertain the character and function of the remedy afforded by it.

[9] At common law the judgment in ejectment was that the plaintiff recover his term yet to come and unexpired. 2 Roscoe, Real Action, 601. By virtue of this judgment, the court by its writ of habere facias possessionem put the complainant in possession of the land covered by his unexpired term. The effect of the judgment was the same in the original fictitious action as it was in the modified form:

"It is a recovery of the possession (not of the seisin or freehold) without prejudice to the right as it may afterwards appear, even between the same parties. He who enters under it in truth and substance can only be possessed according to right. If he has a freehold, he is in as a freeholder. If he has a chattel interest, he is in as a termor. If he had no right to the possession, then he takes only a naked possession." Jackson v. Dieffendorf, 3 Johns. (N. Y.) 270; Atkyns v. Horde, 1 Burr. 114.

The action as thus established continued in England unchanged until the Common-Law Procedure Act of 1852 and the amendatory acts of 1854 and 1860. Martin's Civil Procedure, §§ 169, 170. Under sections 1852, 1853, Code Miss. 1906, a judgment in ejectment is res adjudicata as to the parties and their privies claiming by title arising after the commencement of the action. It would perhaps not be inaccurate to say that an action in the nature of ejectment prevails in Mississippi for the trial of title to land, but in determining the

adequacy of the legal remedy we look to the common law as modified by English statutes at the time of the adoption by Congress of the Judiciary Act of 1789. The fact that the state of Mississippi by statute gives an adequate remedy at law is not sufficient to deprive a federal court of equity of its jurisdiction. Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69.

It is clear that an action that does not try the title, that does not cancel and compel delivery up of outstanding void deeds valid upon their face and which require evidence to establish their invalidity, and which evidence may be lost or destroyed, an action that confers naked possession only without prejudice to the right as it may afterwards appear, even between the same parties, is not a plain, adequate, and complete remedy, sufficient to deprive a court of equity of jurisdiction.

[10] But if the court is in error, if equity has no jurisdiction, it is solely for the reason that, the defendant being in possession, the complainants have a plain adequate, and complete remedy at law in the action of ejectment. In other words, because the legal remedy is as full and efficient as is needed, and after it is afforded complainants they will not need or be entitled to a cancellation of the void deeds, in which case the cause will not be dismissed or remanded, but transferred, under rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), to the law docket.

On the whole, the complainants are in a difficult position. They must steer between Scylla and Charybdis. If equity has jurisdiction for any reason, either undue influence or mental incapacity, entitling them to invoke the equitable remedies of cancellation and surrender up, then it will take charge of the whole case and do complete justice, settling all matters ordinarily determinable at law, without sending the issues to the law side of the court. On the other hand, if there is no equity in the suit, if a bill to cancel or remove clouds will not lie because defendants are in possession, and ejectment will give complainants adequate relief without the necessity of cancellation, then the cause should simply be transferred to the law docket under rule 22 (198 Fed xxiv, 115 C. C. A. xxiv), and an order entered for the pleadings to be recasted in legal form.

This case is distinguishable on this motion from Cates v. Allen, the main reliance of counsel by analogy, in two important particulars:

First. In the latter case there was no equity of any kind in the federal court on the face of the bill, because a creditors' bill does not lie to set aside a fraudulent conveyance and subject a debtor's property to a lien for a simple contract debt before obtaining a judgment at law.

Second. Because in that case it was beyond doubt that the law afforded no adequate remedy, but a legal action was simply a prerequisite or a condition precedent to a suit in equity.

I conclude that the motion to remand should be overruled.