## LAMSON, GOODNOW & YALE *v.* WORCESTER & WOODRUFF.

### *Assumpsit. Equity. Mill Owners. Equitable Lien.*

1. There were three dams or water privileges on the same stream, the plaintiff owning the middle one, the defendant the lower one, and each certain rights in the upper, or "great dam," for the purpose of drawing water from the reservoir made by it. These rights were expressed or defined by the by-laws of the Ascutney Mill Dam Co.,—the common source of title of both parties. The by-law bearing upon this case was: "All the water privileges on each of the falls, sold and unsold, are always holden, and shall be liable according to their relative value, for a fair proportion of the expenses of rebuilding or repairing the great dam; provided such expenses are incurred by the consent and approbation of two thirds, in value, of all the privileges in interest." The plaintiffs repaired the dam, and brought assumpsit to recover of the defendants their proportion of the expense; *Held*, that the action could not be sustained; that the by-law incorporated into a deed would not attach to the conveyance a personal liability of the grantee; that the claim is merely an equitable lien, enforceable only in a court of equity.

2. JURISDICTION—REFERENCE. The jurisdictional question of this character cannot be waived by a reference, and should be determined, when raised at any stage of the proceedings.

HEARD on a referee's report, May Term, 1885, TAFT, J., presiding. Judgment for the plaintiffs to recover $398.73. The referee found, in part:

"The action is assumpsit to recover a share of the expenses incurred by the plaintiffs in repairing the great dam, so-called, on Mill Brook, in said Windsor.

"In 1862, and prior to June of that year, there were three water privileges on Mill Brook, a stream rising in Reading and running through Windsor to the Connecticut river, known and called in this case as the upper or great dam power, the middle or armory dam power, and the lower or grist-mill dam power.

"In general terms Allen Wardner, Thomas Fullerton, and J. W. Hubbard then owned the upper power or privilege, the plaintiffs owned the middle power, and the defendants owned the lower power.

"Both the middle and lower powers had certain rights, expressed in the by-laws of the Ascutney Mill Dam Company, hereto appended, in the upper power,—to draw water from the pond or reservoir made by the upper dam. The upper dam was from 40 to 42 feet high, and was built and intended for the double purpose of creating a power to be used on said dam and to store a surplus of water for use at the middle and lower dams as occasion required.

"In 1862 very little use was made at the upper dam of the upper power. An old saw-mill stood there, but it did a very light business. At this time the middle power was in more extensive and constant use than either of the others. The plaintiffs then and until near the close of the war had contracts with the government for the manufacture of rifles, and were using their power to its utmost capacity.

"The lower power was mainly used at this time to operate a grist-mill on the north side, and a furnace on the south side of the stream, and some occasional work was done in the Dudley shop belonging to said Lamson. The grist-mill did custom work mainly. The furnace was mainly employed in doing work for the plaintiffs.

"The middle dam in 1862 was about 16 feet high, and lower dam about 17 feet high. The middle dam was longer than the lower and stored more water. The lower power was affected in times of high water in the Connecticut river by back water flooding the wheels. This happened only occasionally, and caused a suspension of work, as the testimony showed on an average of ten days a year.

"In June, 1862, the plaintiffs and all parties in interest well knew that the upper dam needed extensive repairs. It had been built many years and had become very leaky, and in order to store all the water that it should, and that was needed by the middle power at least, repairs must be made.

"The plaintiffs in view of their government contracts, had much more interest in having these repairs made than any of the other owners, and actively bestirred themselves to induce the other owners to agree to pay a share of the expense.

"The plaintiffs procured the consent of the owners of the upper dam to the making of the repairs upon a promise to indemnify such owners against their share of the expense.

The plaintiff E. G. Lamson, who was the active man of the plaintiffs' firm, met the defendants with one Draper (who was then in possession of the defendants' property at the lower dam, as hereinafter stated), at the upper dam in June, 1862, and these parties consulted about making said repairs, discussing different plans and different estimates of expense. The plaintiff Lamson and said Draper expressed much anxiety to have the repairs made and to have the defendants agree to share in the expense, and .said Lamson testified that the defendants agreed if he would go on and make the repairs, to pay one third of the expense.

"Both defendants and said Draper deny that the defendants made any agreement to pay one third or any part of such expense, and testified that the defendants refused to pay anything toward such expense unless they were obliged to under the operation of said by-laws. I do not find the agreement claimed by the plaintiffs established, and hence if they are entitled to claim contribution from the defendants, it must arise from said by-laws and the deeds taken by them subject thereto.

"To support a claim for contribution on this ground, the plaintiffs put in evidence a deed from the Ascutney Mill Dam Company, the common source of title of both plaintiffs and defendants, to Allen Wardner, dated October 30, 1841, conveying the lower power, subject to the by-laws above referred to; also deed from said Wardner to Hammond & Draper, dated December 1, 1847, conveying the same property subject to said by-laws; also, execution, levy, and set-off thereunder, in favor of G. H. Shedd against Hammond & Draper, said execution being dated September 10, 1851, and said levy dated October 20, 1851. This levy was made upon the lower power and property therewith connected owned by Hammond & Draper, and was made 'subject to the by-laws of the Ascutney Mill Dam Company.' Also deed G. H. Shedd to Martin Rowe. dated June 4, 1852, conveying the same property and referring for a description of the 'premises and privileges' to the above-mentioned deed of Wardner to Hammond & Draper, dated December 1, 1847, also deed Martin Rowe to defendants conveying the same property, dated June 6, 1853. This deed also refers for a description of the premises conveyed to said deed of Wardner to Hammond & Draper, dated December 1, 1847.

"By these conveyances the legal title to the lower power was vested in the defendants, but I find that when the defendants took this title, June 6, 1853, and until after the repairs on said upper dam were made, said Draper, or the firm of Hammond & Draper, of which said Draper was a member, had the right to said title by agreement with the defendants whenever he paid to said defendants certain moneys which they had been compelled to pay out as sureties for said Hammond & Draper and certain expenses which the defendants had incurred in repairing the property after they took the title, and that in 1862 said Draper was in possession of this property, with the right of redemption, except the Dudley shop, which the defendants conveyed August 31, 1855, to said Dudley, and said Dudley afterwards conveyed to said E. G. Lamson in September, 1863.

"I find that the defendants knew of the by-laws aforesaid."

*  *  *  "On the 13th of August, 1862, the plaintiffs began, and during 1862 and 1863 completed, the necessary repairs to said upper dam, doing the work in a proper manner, at a reasonable expense, and with reasonable expedition, in good faith, supposing that the defendants would be chargeable under said by-laws and their deed for their proper share of such expense."

The by-law bearing on this case is stated in the opinion of the court and in the head-note.

*Davis & Enright*, for the defendants.

Under the 5th article of the by-laws "The water privileges"  *  *  *  "are always holden," etc., "for a fair proportion of the expense of repairing"; not the *owner*.

The plain idea and purpose was to create a lien upon the property itself, not a *personal* obligation; and if a personal obligation, it would not attach to a mortgagee not shown to have had any beneficial *use* of the grist-mill property. The Mill Dam Company had owned the great dam and the several water powers and mill sites, and sold them to different parties. This company was the "common source of title of both plaintiffs and defendant," but the Mill Dam Company owned and controlled the great dam and pond.

The parties to this suit were not owners in severalty or jointly of the mill-dam property, but "both the middle and lower powers had certain rights, expressed in the by-laws * * * to draw water from the pond or reservoir made by the upper dam."

The plaintiffs have mistaken their remedy. They should have brought their suit in equity. *Sanborn* v. *Bailey & Ward,* 47 Vt. 170; *Hagar* v. *Buck,* 44 Vt. 286; *Murray* v. *Jayne,* 8 Barb. 612.

As between the grantor and grantee of premises subject to mortgage, "they did not become personally holden to the mortgagees to pay the mortgages." *Walker* v. *King et al.* 44 Vt. 609; *Whitcomb* v. *Whittemore,* 57 Vt. 437; *Strong* v. *Converse,* 8 Allen, 557.

The only remedy of the mortgagee against the purchaser is upon the estate. 1 Wash. Real Prop. 621, 571; *Smith* v. *Hyde,* 36 Vt. 303; *Kellogg* v. *Robinson,* 6 Vt. 276; *Johnson* v. *Muzzy,* 45 Vt. 419.


*Wm. Batchelder,* for the plaintiff.

The intent of the by-laws was to establish a community of interests between the owners of the water privileges. The by-laws themselves were theirs to control and change as they saw fit. The management of the great dam in all respects was made theirs.

By accepting and adopting a conveyance in terms made subject to this burden of contribution, Woodruff and Worcester bound themselves to perform as therein specified. The acceptance of this burden was part of the consideration for the deed.

He for whose benefit a promise is made, may maintain an action upon it although the promise be made to another and not to him.

That a party agreeing to pay money or perform some beneficial act to or for another should substantially perform the

undertaking, is a great principle of moral as well as legal obligation recognized everywhere.

The ground of this doctrine is, that the law creates the duty, establishes the privity, and implies the promise and obligation on which it rests. Com. Dig. Action on the Case (Assumpsit) E.; *Carnegie* v. *Morrison,* 1 Met. 401; *Bohanan* v. *Pope,* 42 Me. 93; *Crocker* v. *Higgins,* 7 Conn. 347; *Brewer* v. *Dyer,* 7 Cush. 337.

The accepting and adopting a written contract by a party who has not put his name to it, binds such party equally as if he had signed such contract. *Patchin* v. *Swift,* 21 Vt. 292; 24 Vt. 194; *Goodwin et al.* v. *Gilbert et al.* 9 Mass. 510; *Gale* v. *Nixon,* 6 Cowen, 445.

Whoever claims an estate under any deed ought, in reason and equity, to be obliged to take it under the terms expressed in the deed.

The by-laws give defendants privileges and impose burdens,—it is not equity for them to have kept the privileges and now shirk the burdens.

The opinion of the court was delivered by

ROYCE, Ch. J. This is an action of assumpsit, brought by the plaintiffs to recover from the defendants a certain proportion of the expense of repairing a dam. The case was referred. The referee fails to find the express promise or agreement by the defendants to pay a portion of said expense which the plaintiffs endeavored to prove, and finds that if the plaintiffs are entitled to claim contribution from the defendants, it must arise from the provisions contained in the by-laws of the Ascutney Mill Dam Company, which was the common source of title of both plaintiffs and defendants, and the fact that the various conveyances in the chain of title from said Ascutney Mill Dam Company to the defendants, were made subject to said by-laws. This finding restricts the inquiry as to the cause of action and the jurisdiction of the court over it,

to the legal meaning and effect of the by-law applicable to this subject.

Art. 5 of said by-laws is the only one bearing upon the question, and that reads as follows: "All the water privileges on each of the falls, sold and unsold, are always holden, and shall be liable according to their relative value, for a fair proportion of the expenses of rebuilding, or repairing the great dam; provided such expenses are incurred by the consent and approbation of two thirds, in value, of all the privileges in interest."

This language, incorporated into a deed of premises and appurtenant privileges to which it refers, as a condition, has the effect simply to make the conveyance subject to an equitable lien upon the premises and privileges conveyed, of the character and subject to the conditions set forth. It does not purport or attempt to attach to the conveyance a personal liability of the grantee. It is, in effect, the same as a conveyance of land subject to a specified mortgage outstanding. Unless there are words in such a conveyance importing with reasonable certainty that the grantee is to assume and pay the incumbrance specified, he incurs no personal liability by the acceptance of it, and promises nothing to the incumbrancer. *Davis* v. *Hulett, ante*, 90; Jones Mort. s. 1712; Pom. Eq. Jur. s. 1205.

The plaintiffs, therefore, simply establish that if the conditions in the latter clause of by-law 5 were complied with, there is a claim outstanding which constitutes an equitable lien upon premises in which the defendants have a title or interest of some kind. Such a lien can only be enforced in a court of equity. By the provision in the by-law, which is incorporated into these conveyances by reference, the property is made the primary fund from which such a claim is to be paid. A court of equity alone can subject it to such a burden; and that court is the proper tribunal to determine any questions arising as to the distribution of the burden, or the liability of the different owners of privileges

on the ground of a common benefit. *Sanborn* v. *Braley &
Ward,* 47 Vt. 170.

A jurisdictional question of this character cannot be
waived by a reference, or in any other way, and should be
determined when raised at any stage of the proceedings.
*Thayer* v. *Montgomery,* 26 Vt. 491; *Hipp* v. *Babin,* 19 How.
278; *Dumont* v. *Fry,* 12 Fed. Rep. 21.

The judgment is reversed, and judgment for the defend-
ant Woodruff to recover his costs.