---

# SMITH *v.* COSEY.

---

PARTITION; TENANTS IN COMMON; STATUTES OF DESCENT; PRACTICE; RECALL OF MANDATE.

1. *Quære,* Whether a tenant who is not in possession can maintain a bill in equity for partition against his cotenant in adverse possession. (Citing *Mudd* v. *Grinder,* 1 App. D. C. 419; *Williams* v. *Paine,* 7 App. D. C. 116; and *Roller* v. *Clarke,* 19 App. D. C. 544.)

2. Where, on a bill for partition, it appears that the title was formerly in one B, who died intestate and without issue, and there is no proof of the extinction of numerous classes of heirs of B's father, the court will not decree the title to be in the kindred of B's mother, since, under D. C. Code, secs. 940–944 [31 Stat. at L. 1342, chap. 854], the former class is entitled to priority over the latter. (Distinguishing *Jennings* v. *Webb,* 8 App. D. C. 54, and citing *Walker* v. *Lyon,* 6 App. D. C. 485.)

3. Where a judgment of reversal has been handed down, and where, in accordance with rule 23, a mandate has issued at the expiration of fifteen days thereafter,—a motion by the appellee to recall the mandate and to file an additional transcript is too late.

No. 1546.  Submitted October 12, 1905.  Decided February 6, 1906.  Motion to recall mandate submitted March 29, 1906.  Decided April 13, 1906.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit for partition; and on a motion by the appellee to recall the mandate and for leave to file an additional transcript.

*Decree reversed, and motion denied.*

The facts are sufficiently stated in the opinion.

*Mr. Charles A. Keigwin* and *Mr. Charles W. Fitts* for the appellant.

*Mr. Joseph H. Stewart* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

A full statement of this confused case would necessarily reproduce the confusion which the record shows. We state so much of the case as is necessary to make plain the conclusion we have reached.

The second amended bill of complaint of Alfred B. Cosey against Moses Smith and others is a bill for partition or sale of lot 7, in square 80, in the city of Washington. The complainant, Alfred B. Cosey, alleges that George Augustus Butler died seised of this lot and intestate, leaving a widow, and that the complainant, a grandnephew of Susan Butler, who was the mother of George A. Butler, and the other defendants, equally remote kindred on the maternal side, are the next of kin and heirs at law of George A. Butler. Certain assignees of descendants on the maternal side are made defendants also. The complainant alleges that, by sundry conveyances, he is seised of seven twelfths of lot 7, assuming these descendants on the maternal side to be the heirs at law of George A. Butler.

The only defendants who answered deny very material allegations of the bill. One defendant, Moses Smith, the appellant, filed a plea of title to lot 7, in square 80, in himself by conveyance from one Marshall, grantee from the commissioners of the District pursuant to a sale of the lot for delinquent taxes, and possession adverse and hostile. This plea was first held to be good, and later held to be bad. Testimony which supported it was taken and later ordered suppressed. Thereupon arose questions that need not here be decided. The testimony conceded to be properly before this court is insufficient to support the decree for sale granted by the court below.

There is proof enough that Henry Butler, about seventy years ago, purchased the half of lot 7, in square 80, in the city

of Washington, and it is likely that it was conveyed to him. It may be that Henry Butler, who lived and died in the house on the lot, died intestate. It would have been easy to prove the fact. There is enough proof to show he was intermarried with Susan Smith, and that the issue of this marriage was three sons and four daughters. It appears that George Augustus Butler was Henry Butler's son, and that he married, and that George A. Butler's widow lived, and perhaps still lives, in England. The proof is silent respecting the issue of that marriage. There may or may not be children now living. There was an order of publication against this widow as Annie S. Butler. There is no proof of her name, but in another equity proceeding, partly set out in the record, she appears to be Mary S. Butler.

Julia, a daughter of Henry and Susan Butler, was married. Whether she left issue does not appear. The proof in the record is not positive, but tends to show that the children of Henry Butler and Susan, his wife, are all dead. It may be they died without issue surviving, though the proof is not sufficient to show it.

If George Augustus Butler survived his brothers and sisters and their issue, and was seised and possessed of this lot, and died intestate, it was necessary to show that all the kindred of the blood of the father of George A. Butler were extinct according to the order of the statute of descents. Code, secs. 940–944. This bill of complaint and all the testimony ignores the kindred of the blood of the father, and is only concerned with certain remote descendants on the maternal side. These proceedings assume, but do not prove, the extinction of all descendants of the blood of the father.

The record in this case includes a part of the proceedings under a bill filed by Henry Hannah, assignee of Russell & Company, against the unknown heirs of George Augustus Butler and his widow, to enforce a mortgage imperfect in form, given by George Augustus Butler in China to his employers, Russell & Company, as security for a debt. Under that proceeding, this lot 7, in square 80, was decreed to be sold, and in the decree

it appears that the widow, Mary S. Butler, had consented to a decree for sale, but it does not appear in the record whether issue of her marriage with George Augustus Butler were or were not then living. The decree was vacated, yet that proceeding appears to have led to this suit for partition; in form, a bill for sale in partition; in substance, a contest between Alfred B. Cosey, a descendant on the maternal side, claiming an interest of seven twelfths of this lot, and Moses Smith, his cousin, claiming adversely the whole lot, as a purchaser from one Marshall, to whom the commissioners of the District, in pursuance of a sale of this lot for delinquent taxes, had conveyed it, and by adverse possession for about a year and a half. Neither litigant appears to have been industrious to discover whether or not nearer kindred still live and inherit from George A. Butler.

From the testimony of Robert W. Diggs, a descendant on the maternal side, it appears that the widow of Henry Butler remained in possession of the houses on lot 7, square 80, after her husband's death, until her death, about 1869, and that three daughters remained with her. He further testified that Archie Lewis took possession of the property until George Augustus Butler came back from China and appointed one Henry Smith his agent to lease the premises and collect the rents. Later, Mr. Hackett, as solicitor for Hannah, the complainant in the bill against the unknown heirs of George A. Butler, assumed control of the property, and on December 15, 1892, William John Miller was appointed trustee to sell the same under a decree after vacated. In 1894 one Lee occupied the house, and later sublet the premises to one West, who part of the time paid rent to Lee, and during the rest of West's four years of occupation he paid rent to no one. West abandoned the premises in 1898, for in 1897 the lot had been sold for delinquent taxes and the tax title was maturing. In May, 1899, the commissioners of the District conveyed the lot to one Marshall by a deed which appears in the record, as before stated. In October, 1899, Marshall conveyed his title to the appellant, Moses Smith, who appears during the lifetime of his father, Moses

Smith, and about November, 1898, to have taken possession of the house and lot, and later to have leased it and collected rents continuously since. Moses Smith, the father, who died February 2, 1900, was a son of Mary Smith, who was a sister of Susan Butler, the mother of George A. Butler. All the parties to this suit are descendants on the maternal side or assignees of such descendants, and whether any of them had such possession as would enable the complainant as a tenant in common to maintain a suit for partition may well be questioned. At the time Moses Smith, Jr., took hostile possession of the property and purchased the tax title his father was living. At the time he took possession his father, Moses Smith, was a tenant in common, according to the complainant's theory of the case.

The complainant's second amended bill states a case of disseisin and ouster by his cotenant, Moses Smith, the father, but he alleges that the facts made said Smith and his son, the appellant, after him trustees for cotenants.

The proof shows that Moses Smith, the son, in the lifetime of his father, acting for himself, possessed himself of the house and lot and received the deed from Marshall and wife, the same Marshall who was the grantee of the tax title. Kent says: "A court of equity does not interfere unless the title be clear, and never where the title is denied or suspicious until the party seeking a partition has had an opportunity to try his title at law." 4 Kent, Com. *365.

In other jurisdictions it is held that in proceedings by petition for a partition of land held in common the application must show a seizure and actual possession. A disseisin or an adverse possession destroys the common possession and bars a suit for a partition so long as the ouster continues. For instance, in *Clapp* v. *Bromagham,* 9 Cow. 530, and *Adam* v. *Ames Iron Co.* 24 Conn. 230.

This court has said in *Roller* v. *Clarke,* 19 App. D. C. 544: "It is not alleged in the bill that the complainants were in the actual possession of the lands, or had even a constructive possession; and it is not yet a settled question in this District that without actual possession the court has jurisdiction to

entertain a bill for partition at all." *Williams* v. *Paine,* 169 U. S. 55, 80, 42 L. ed. 658, 668, 18 Sup. Ct. Rep. 279, 7 App. D. C. 116, 131.

In the latter case, *Williams* v. *Paine,* at page 132 [7 App. D. C.], this court, though not deeming it necessary to decide the precise question, said: "It is certainly the well-established doctrine of a court of equity that it will not entertain suits for establishing legal titles, and that such doctrine is founded upon the clearest reason, 'and the departing from that practice, where there is no necessity for so doing, would be subversive of the legal and constitutional distinctions between the different jurisdictions of law and equity.' *Hipp* v. *Babin,* 19 How. 277, 15 L. ed. 634."

And as the bill in the present case also asks from the appellant an account of rents and profits, we should observe that this court, in the case just cited, adds that "it is equally well settled that 'where a party has a right to a possession which he can enforce at law, his right to the rents and profits is also a legal right and must be enforced in the same jurisdiction. The instances where bills for an account of rents and profits have been maintained are those in which special grounds have been stated to show that courts of law could not give a plain, adequate, and complete remedy.' " *Hipp* v. *Babin, supra.*

Mr. Justice Peckham, in the appeal in *Williams* v. *Paine,* 169 U. S. 80, 42 L. ed. 668, 18 Sup. Ct. Rep. 279, adds: "By this disposition of the whole case upon the merits we are not to be considered as deciding that parties situated as the plaintiffs were in this case, out of possession, can maintain an action for partition. We have not discussed that question, and do not decide it, because it was unnecessary on account of the views we have stated in relation to the other aspects of the case."

In *Mudd* v. *Grinder,* 1 App. D. C. 419, this court said: "The legal title to the property is disputed; and, while the jurisdiction of a court of equity to decree partition, or sale for partition, is undoubted in cases where there is no serious question of the legal title as between the parties, it is equally well

settled that the court does not sustain a bill for partition unless the legal title be clear."

The appellant, Moses Smith, in his father's lifetime, took possession of the premises in this case decreed to be sold and received the deed for the same from Marshall and wife during the lifetime of his father, the then alleged cotenant of the complainant. Prior to the possession of the appellant, as we have stated, other strangers successively possessed the premises now sought to be sold in partition for some years. None of the maternal cousins of George A. Butler ever had possession except the appellant, Moses Smith, and the bill alleges and the proof shows that, so far as he could do so, the appellant had ousted and disseised the complainant and all the alleged kindred of George A. Butler. It is not necessary for us here to characterize the acts of the appellant, nor is it necessary here to decide whether or not, in the absence of seisin and possession, the complainant in this case is entitled to maintain this bill for partition. We would hesitate to affirm his right to maintain such suit for such purpose. We determine this case upon another ground. We conclude that the complainant's proof utterly fails to sustain his bill for partition.

Beside the complainant Cosey, two witnesses only were produced to sustain the title of three classes of alleged cousins on the maternal side to this lot 7, in square 80, of which George A. Butler seems to have died seised.

Cosey, the complainant, was born in Washington in 1863. In boyhood he went to sea, and returning for awhile he thereafter again went to sea and returned to Washington, remaining three or four years, when he was a student at Howard University, and he appears since to have resided in Newark, New Jersey. He testifies that all of the children of Henry Butler and Susan Butler died, leaving no issue, and all died intestate, so far as he knows. His testimony shows he knew Susan Butler during her widowhood, and knew of her death, and knew three of her daughters when the complainant was a child, and that he saw George A. Butler once when he came back from China. He has no knowledge whether the other Butler children are living or

dead; whether they left issue or died testate or intestate. His testimony does not show any knowledge whereon he could base his sweeping statement concerning the extinction of the descendants of Henry and Susan Butler. He testified positively that Susan Smith, married to Butler, Millie Smith, married to Manning, and Mary Smith, married to another Smith, were three sisters. He did not know the names of their parents, and proceeds to detail the descendants of Susan Butler's two sisters. Part of his statements are concerning some of the descendants of Mary Smith, conceded to be a sister of Susan Butler, but some of these descendants as witnesses denied the relationship with complainant that he claims.

Robert Diggs, claiming to be a descendant of Millie Manning, testified that the children of Henry Butler were three sons and three daughters, all now dead. He adds, they left no children, "so far as I know." He never knew George A. Butler, or Russell or Roger Butler, because all of them went away before the war. He does not know whether they married or died leaving issue. Julia Butler married Morris, but had no children. He does not know whether the other daughters married or not. Nevertheless, he testifies that all died without issue. Manifestly the knowledge of the witness is not as great as his zeal.

Lucy Ingram, eighty years old and infirm, testified that Susan Butler, Millie Manning, and Mary Smith were sisters, and that the witness was their cousin, and that the youngest of them was a grown woman when the witness was a child. She knew Julia Butler died soon after her marriage, and was impressed that the three sons and four daughters of Henry and Susan Butler died of consumption. Whether leaving issue or not she did not say. Later she recalled that George A. Butler went to China. Naturally, her testimony concerning the descendants of the two alleged sisters of Susan Butler was fragmentary and almost valueless.

These details are stated here to show the slight and insufficient evidence supporting the decree appealed from. In *Jennings* v. *Webb,* 8 App. D. C. 54, and in other cases this court has liberally interpreted the statutes intended to preserve rights of

former slaves and their descendants in real property, and has applied as favorably as possible the rules of evidence respecting the pedigrees of such to enable the courts to help such to establish their rights to real property. We are not now unmindful of the difficulties, but such considerations suggest that the safer rule in a case like this where lot 7, in square 80, descended to George A. Butler, or to him and others, from his father, who bought the lot and himself built the house thereon, where Henry Butler established a home and lived and died, and Susan, his widow, dwelt until her death about 1869, a home located in the central part of this city, a court of equity should require a more careful search for their descendants to be made by a suitor for partition, lest possibly a nomadic family, scattered in adjacent States, inheriting land here, be prejudiced by such a proceeding as this. The court should require some reasonable measure of proof respecting people of a prolific race, and at least should require some proof of the unusual circumstance of the extinction of all the kindred of the blood of the father, before decreeing a sale of this property and the distribution of its proceeds among remote maternal cousins, if, indeed, the proof suffice to show that the complainant and certain of the parties are such maternal cousins.

Titles under decrees of court should be as safe to purchasers as the care of courts can make them. As was said in *Walker* v. *Lyon,* 6 App. D. C. 485: "There must be a good title shown before the court can be compelled to proceed to partition."

There is in this case a lack of proof of essential facts. Until the extinction of the numerous classes of heirs of the blood of the father be shown, a court of equity should not decree the title to the houses and lot to be in the alleged maternal cousins.

There is little evidence of pedigree here. Cosey and Diggs speak as from personal knowledge as to matters they could not know except from hearsay. In the whole case there is no statement except from the maternal side, and all the hearsay as to the pedigree which is the basis of the confident statements of the complainant Cosey is obviously gathered from persons alleging

their relationship on the maternal side. Such testimony illustrates the value of the well-settled rules.

"The law resorts to hearsay evidence in cases of pedigree upon the ground of the interest of the declarants in the person *from whom the descent is made out,* and their consequent interest in knowing the connections of the family." [1 Greenl. Ev. sec. 103.]

"But the declarations of a person belonging to another family, such person claiming to be connected with that family only by the intermarriage of a member of each family, rests upon a different principle. A declaration from such a source of the marriage, which constitutes the affinity of the declarant, is not such evidence *aliunde* as the law requires." *Blackburn* v. *Crawford,* 3 Wall. 187, 18 L. ed. 191.

And again, as Justice Cox said in *Anderson* v. *Smith,* 2 Mackey, 281: "Some degree of evidence is required, otherwise a mere stranger, by claiming alliance with a family, might assume the power of materially altering the rights of its several branches by making statements in his lifetime respecting them."

It is true that Cosey and Diggs do not offer the declarations of anyone, but speak confidently as to personal knowledge [of] that which, if sincerely testified [to], must be the memory of declarations of the family pedigree, declarations of those on the maternal side.

This case has been long pending. The bill has been repeatedly amended. There was ample opportunity to prove the devolution by inheritance of the title of the lot of Henry Butler which descended to his son George, or at least to Henry Butler's children. It is not necessary to decide other questions raised in this record, since at present we find the complainant has failed to sustain his right to relief.

It is true that all the parties in interest are naturally adverse to nearer kindred; but it may be possible that the remote maternal descendants, if given the opportunity, may be able to prove the extinction of all the nearer kindred, or it may be that such exist and may ask to be made parties.

The case, therefore, will be remanded, so that proceedings, if

had, may be had in accordance with this opinion, however, with leave to have the bill dismissed if, in the discretion of the court below, that should be proper.

The decree should be reversed with costs and the cause remanded.    It is so ordered.                    *Reversed.*

On behalf of the appellee, a motion was made on March 29, 1906, to recall the mandate, suggesting a diminution of the record, and for leave to supply the same by filing an additional transcript setting out certain depositions omitted from the original record.

On April 13, 1906, the motion was denied, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

The right of the complainant to maintain the bill for partition in this case depended, in the first instance, on proof sufficient to show that George Augustus Butler, who died seised of the premises, left no descendants, that the kindred of the blood of his father, who would next have inherited by virtue of the statute of descent, were extinct and that he and those under whom he claimed, and the defendants and those under whom they claim, were the descendants of the brothers and sisters of Mary S. Butler, the mother of said George A. Butler.    The decree appealed from was reversed, because of the insufficiency of the evidence contained in the record, and the cause was remanded, that the complainant might have the opportunity to perfect his evidence, if so advised.

This motion, filed March 29, 1906, alleges that the depositions of two witnesses were in the testimony on the hearing, and were omitted in preparing the transcript.    Copies of these are attached, and their contents tend to supply the defects in the proof heretofore indicated; but whether they are sufficient for that purpose we do not now decide.    It is stated in the affidavit attached to the motion that these depositions were taken in equity cause No. 13,612, and were introduced in this case, and were considered on its hearing below. The record filed in

this court on appeal shows that certain parts of the record in cause No. 13,612 were introduced in evidence, but does not show that these depositions were also introduced and read. The motion asks that the mandate be recalled, suggests the diminution of the record, and prays that the same may be supplied by filing an additional transcript setting out said depositions, and that a reargument may be had.

It is not made to appear that these depositions were actually embraced in the record on the hearing below, but, assuming that they were read without objection on that hearing, the motion comes too late.

Parties have themselves to blame if they submit their cases in this court without ascertaining that the records are defective, and availing themselves promptly of the liberal provisions of Rule XIV. for supplying such defects.

The insufficiency of the evidence in the respects mentioned was one of the points made on the argument; and, had the appellee then suggested a diminution of the record, and made a sufficient excuse for his neglect, the hearing might have been postponed with leave to perfect the same. The argument proceeded upon the assumption that the record was complete. The decree was reversed on February 6, 1906, and, upon the expiration of the fifteen days required by Rule XXIII., no motion for reargument having been filed, the mandate issued.

The appellee must now retry his case in the court below, where he will have the opportunity to have it heard upon all of the evidence available, it being understood that the question actually determined by this court was that the evidence contained in the record as submitted was not sufficient to show title in the descendants of the mother of George Augustus Butler.

The motion is denied, with costs.          *Motion denied.*