### DRESSER *v.* HATHORN *et al.*\*

(Division A.    June 15, 1926.)

[109 So. 23.    No. 25388.]

1. STATUTES.

Ambiguous section of statute must be construed in connection with whole statute of which it is a part, and resort may be had to purpose and intention of legislature in adopting it.

2. PUBLIC LANDS. *Law authorizing granting patents on payment of certain sums and legalizing acts held not to vest title to lands, in absence of showing payments (Laws 1873, chapter 114; Act April 8, 1871 [Laws 1871, chapter 169]; Act Cong. Sept. 28, 1850 [U. S. Comp. St., sections 4958-4960]).*

Under provisions of Laws 1873, chapter 114, construed together, title to lands patented by state of Mississippi to the Pearl River Improvement & Navigation Company by Act approved April 8, 1871 (Laws 1871, chapter 169), after donation by Act Cong. Sept. 28, 1850 (U. S. Comp. St. sections 4958-4960), did not vest in company or any of its vendees, in absence of showing that payments stipulated for in statute were ever made, since purpose of act was to invalidate patents and revest title to lands in state, unless provisions and conditions of act were strictly complied with.

\*Corpus Juris-Cyc References: Public Lands, 32Cyc, p. 927, n. 80. Statutes, 36Cyc, p. 1110, n. 54; p. 1128, n. 54. General Principles of construction and interpretation of statutes, see 25 R. C. L., pp. 957 et seq.; 3 R. C. L. Supp., p. 1435; 4 R. C. L. Supp. 1610; 5 R. C. L. Supp., p. 1355.

APPEAL from chancery court of Pearl River county. HON. T. P. DALE, Chancellor.

Bill by Louisa E. Dresser against F. C. Hathorn and others seeking to quiet and confirm title to certain lands and for a temporary injunction. From a decree dissolving the injunction, plaintiff appeals. Affirmed, and cause remanded.

*H. C. Holden* and *E. O. Sykes,* for appellant.

I.  The complainant, appellant, purchased this land from the Edward Hines Yellow Pine Trustees two years before the trustees instituted the four suits in the Federal court about the title to said lands.  These suits were instituted and prosecuted without her knowledge or consent.  For these reasons she was neither a party to the suits nor a privy thereto and, therefore, the decrees of the Federal court in those cases are not *res adjudicata* as to her.  *Creegan* v. *Hyman,* 93 Miss. 481; *Nelson* v. *Ratliff,* 72 Miss. 667; *Shotwell et al.* v. *Lawson et al.,* 30 Miss. 27; *Trust Co.* v. *Hardwood Co.,* 74 Miss. 584; *Lipscomb* v. *Postell,* 38 Miss. 489.

II.  Since the complainant, appellant, had neither notice nor knowledge of the Federal court suits, and was neither a privy nor party to them, she is not estopped by the final decrees of the Federal court.  27 R. C. L., p. 676, sec. 439; 10 R. C. L., p. 693, sec. 21; *Staton* v. *Bryant,* 55 Miss. 261; *Madden* v. *Railway Co.,* 66 Miss. 258; *Barrier* v. *Kelly,* 82 Miss. 233; *Brantley* v. *Wolfe,* 60 Miss. 420; *Thomas* v. *Romano,* 82 Miss. 256; *Lumber Co.* v. *Clark,* 95 Miss. 244; *Davis* v. *Bowman,* 55 Miss. 671; 23 R. C. L. 24, p. 170; *Mortgage Co.* v. *Bunckley,* 88 Miss. 641; *Hart* v. *Foundry Co.,* 72 Miss. 809; Chapter 46, Hemingway's Code, section 2498 et seq.  (Section 3147 et seq., Code of 1906); *Bacon* v. *Gardner,* 23 Miss. 60; *Allen* v. *Poole,* 54 Miss. 324; *McCutchen* v. *Miller,* 31 Miss. 83; *Nelson* v. *Ratliff,* 72 Miss. 667; *Alliance Trust Co.* v. *Hardwood Co.,* 74 Miss. 584.

III.  The complainant, appellant, had done nothing either actively or refrained from performing any duty owed by her to the defendants, appellees.  She only failed to record her deed promptly.  She has, therefore committed no acts which constitute an estoppel *in pais.*  See authorities under subhead II; 23 R. C. L., sec. 24, p. 170;

Sections 2288, 2292, Hemingway's Code (Sections 2784, 2788, Code of 1906); *Dixon* v. *Lacost,* 1 S. & M. 70; *Valley Co.* v. *Railway Co.,* 58 Miss. 846; *Chuffee* v. *Holpin,* 62 Miss. 1; *Reddock* v. *Williams,* 129 Miss. 733; *Henderson* v. *Downing,* 24 Miss. 106; *Edmondson* v. *Meacham,* 50 Miss. 34; *Carlisle* v. *Tindale,* 49 Miss. 229; *Bernheim* v. *Beer,* 56 Miss. 149; 12 R. C. L., p. 465, sec. 2; *Johnson* v. *Bank Co.,* 85 Miss. 234; *Day* v. *Goodbar,* 69 Miss. 687; *Klein* v. *Richardson,* 64 Miss. 41.

IV. The supreme court of Mississippi neither expressly nor impliedly passed upon the Act of 1873 and especially section 6 thereof, invoked by appellant, in the cases of *Becker* v. *Columbia Bank,* 112 Miss. 819; *Hardy* v. *Hartman,* 65 Miss. 504; *Hines & Co.* v. *Martin,* 99 So. 825.

V. No rule of property was established by the decisions of the supreme court in the above cited cases which govern the title to the land involved in this controversy. *R. R. Co.* v. *Adams,* 81 Miss. 115.

VI. Complainant, appellant, had no knowledge of the pending litigation in the Federal courts and cannot be charged with notice thereof under this record. 6 C. J., p. 638, section 144; 2 R. C. L., pp. 962, 965, sections 38, 39, 40.

VII. Since neither the appellees nor their immediate predecessors in title purchased these lands from the Edward Hines Yellow Pine Trustees, the grantor of the complainant, appellant, then these defendants are not innocent purchasers for value without notice. *Reddock* v. *Williams,* 129 Miss. 733; authorities cited under subhead III.

VIII. The deed from the Edward Hines Yellow Pine Trustees to complainant, appellant, is a valid legal conveyance. The consideration therefor cannot be ques-

tioned by the defendants, appellees. 22 C. J., p. 144; 17
Cyc., p. 817; *Burnet* v. *Smith,* 93 Miss. 572; *Hilzheim* v.
*Drane,* 10 S. & M. 556.; *Wilkins* v. *Riley,* 47 Miss. 306;
*Brown* v. *Freeland,* 34 Miss. 181; *Wilkie* v. *Collins,* 48
Miss. 496; *Clay* v. *Allen,* 63 Miss. 426; *Cherry* v. *Latimer,*
103 Miss. 524; and *Banks* v. *Banks,* 118 Miss. 738.

IX. These lands were selected by the proper state
officials as swamp and overflowed land lying on Pearl
River. This judicial determination of these officials con-
clusively established in this case that these lands are
of that character. *Hines* v. *Brown & Co.,* 133 Miss. 334.

X. Chapter 114, Laws of 1873, and especially section
6 thereof, validated, legalized and confirmed the title to
this land then held by M. S. Baldwin, and to his succes-
sors in title, which title is now held by this complainant,
appellant. For which reason the appellant is the owner
of these lands. McLaurin Act of 1905 discussed in *Shoub*
v. *Perkins,* 111 Miss. 78; *Hines* v. *Brown & Co.,* 133 Miss.
334; *Paxton* v. *Valley Co.,* 67 Miss. 96; *Shotwell* v. *Rail-
way Co.,* 69 Miss. 541; Abatement Acts.; Validating Acts;
*Gamble* v. *Witty,* 55 Miss. 26.

*Rawls & Hathorn* and *J. C. Shivers,* for appellees.

I. and II. We will first discuss the first and second
finding of the chancellor. We are discussing the two find-
ings together for the reason that they are both estoppel,
the one being an estoppel by judgment and the other an
estoppel because of the acts of omission or commission
of the parties, or their agents or privies. In support of
the chancellor's finding of estoppel both by judgment and
*in pais* in this case we cite: 15 R. C. L., p. 1009, par. 483;
34 C. J. p. 938, par. 1343; *Heinroth* v. *Griffin,* 242 Ill. 610,
90 N. E. 199; *Hall* v. *Sauntry,* 71 A. S. R. at 497.

Measured by the rule there stated appellant would cer-
tainly be estopped for it was certainly gross negli-

gence—to place the most charitable construction on the whole matter—of her agent and attorney, Mr. Bennett, in not recording her deed that made it possible for the legal fraud, which the trustees and their attorneys perpetrated on appellees predecessors in title, by claiming title to the lands and litigating with them, to be perpetrated; and to hold otherwise would bring undeserved hardships on appellees and their immediate vendors. See 10 R. C. L., p. 692, par. 21; 10 R. C. L., p. 695, par. 23; 21 C. J., p. 1060, par 8; *Conn. Mut. Life, etc.,* v. *Talbot,* 3 A. S. R. 655; *Marling* v. *Nommensen,* 115 A. S. R. 1017.

The chancellor's first and second findings are manifestly right and appellant is estopped both by judgment against the trustees, her vendors, and by her own acts both of omission and commission.

III. The third finding of the court holds that the supreme court necessarily considered chapter 114, Laws of 1873, and section 6 thereof, in *Becker* v. *Columbia Bank,* 42 Miss. 825, and that the court necessarily held that chapter 114, Acts of 1873, did not ratify or confirm or legalize the deed of conveyance from Pearl River Navigation and Improvement Company to Baldwin.

Our information is that the records in both the supreme court and in the circuit court of Lincoln county have been lost in the *Hardy* v. *Hartman case,* 65 Miss. 504, and it is, therefore, impossible to get a description of the lands involved in that case so as to trace its history and we, therefore, do not know whether the lands involved in that case were lands which had not been sold by the Pearl River Improvement and Navigation Company prior to the Act of 1873.

Appellant is certainly claiming title through a patent issued to the Pearl River Navigation and Improvement Company. She tries to evade this in a way by saying that her title from the state comes from section 6 of the Act of 1873, but certainly if this section means and was intended to mean what appellant contends, it would nec-

essarily have to be held to validate all patents issued to
the Improvement Company, where the land had prior
to the passage of the act been deeded (?) by the Improve-
ment Company to individuals. But in announcing the
rule of property in *Hardy* v. *Hartman*, the court says in
*Hines* v. *Brown, supra*, that the rule applies to *all* lands
patented to the Improvement Company. We submit
that the appellant cannot rely upon the Act of 1873 as
a ratification of her title in this case.

The Edward Hines Yellow Pine Trustees, the grantors
of appellant, litigated the title to this land with the pre-
decessors in title of the appellees in the United States
court, 268 U. S. 459, 69 L. Ed. 1050. In that litigation
the Edward Hines Yellow Pine Trustees did not plead
or suggest the Act of 1873 as a source of title in the dis-
trict court, and it was said by the United States supreme
court that their right to suggest and insist on the Act of
1873 as a source of title in that court was foreclosed.

In addition to the fact that Judge Bennett was acting
and appearing as agent and attorney for Miss Dresser
in all the matters hereinabove related, there are other
strong facts and circumstances in the record which sus-
tain the finding of the chancellor that "from the facts
and circumstances admitted or proved on the hearing,
Miss Dresser was in privity with the Edward Hines
Yellow Pine Trustees."

There is abundant evidence in the record to support
this finding by the chancellor. Where issues of fact pre-
sented by pleadings are controverted on all material
points, either directly or by circumstances, the court will
not disturb the findings of the chancellor on the main
issue. *Bacot* v. *Holloway*, 104 So. (Miss.) 696.

It is our contention also, as already intimated herein,
that the Act of 1873 did not intend to ratify the title to
any land patented to the Improvement Company unless
and until all conditions of the act should have been com-
plied with. The Pearl River Improvement & Navigation
Company titles have been a source of litigation before

the courts of Mississippi and before the Federal courts since 1888. There have been presented to and passed upon by the supreme court of Mississippi and reported four cases involving these titles: *Hardy* v. *Hartman,* 65 Miss. 504; *Becker* v. *Columbia Bank,* 112 Miss. 819; *Tynes* v. *Southern Pine Co.,* 54 So. 885; *Edward Hines Yellow Pine Trustees* v. *Martin,* 99 So. 825; and the question has been considered by this court in one other case, *Edward Hines Yellow Pine Trustees* v. *Moore,* 98 So. 158. There have been presented to and passed upon by the United States courts three cases involving these Pearl River Improvement and Navigation Company titles; *Bradford* v. *Hall,* 36 Fed. 801; *Southern Pine Co.* v. *Hall,* 105 Fed. 84; *Edward Hines Yellow Pine Trustees* v. *Martin et al.,* 69 L. Ed. 604. It does not appear from the official report in the Hardy-Hartman case and in the Tynes case when and to whom the Pearl River Improvement & Navigation Company parted with its claim of title to the land, and the records in those cases are lost, but it does appear in those cases as reported that the Pearl River Improvement title was claimed in each instance through a tax sale. In all the other cases it appears that the Pearl River Improvement & Navigation Company claim of title was derived through the deed of November, 1872, from Pearl River Improvement & Navigation Company to Matthew S. Baldwin, which is the same deed through which appellant claims title and is the deed which she claims was ratified by section 6 of the Act of 1873. In all of these cases other than *Hardy* v. *Hartman* and *Tynes* v. *Southern Pine Company,* at some stage of the litigation it was claimed by the parties holding the Pearl River Improvement & Navigation Company title that the same was ratified by the said Act of 1873.

In all of these cases, except *Southern Pine Co.* v. *Hall, supra,* the Pearl River Improvement & Navigation Company title was held to be void; and even in that case, although the court declared the title valid, it did not plant its decision upon the Act of 1873, but rested it upon the

proposition that the bond in the case was the bond required by the Act of April 8, 1871. However, the circuit court of appeals in *Edward Hines Yellow Pine Trustees* v. *Martin*, 296 Fed. 442, which decision was affirmed by the United States supreme court in *Hines* v. *Martin*, 69 L. Ed. 604, has overruled the case of *Southern Pine Co.* v. *Hall*.

With this question presented in its various forms in all these cases, with the identical title that is involved in the case at bar; that is, a title resting upon a deed from Pearl River Improvement & Navigation Company to Baldwin, dated November, 1872, the supreme court of Mississippi has never deemed the question of sufficient importance to merit comment in its opinions. There must be some reason for this, and it can be found, we think, in the fact that the Act of 1873 shows conclusively that it was never intended that title to any lands patented to the Improvement Company should be ratified unless the twenty-five cents per acre required to be paid into the state treasury by the act, as well as all of the other requirements thereof, should be complied with; and in none of those cases did it appear that any of these requirements of the act had been complied with. Of course, appellant cannot claim title under the act without showing affirmatively that she complied with the requirements of the act. See *Shelton* v. *Thompson*, 53 So. 538.

Wherever the words of a statute are ambiguous or the meaning doubtful, the established rule of construction is that the intention must be deduced from the whole statute, and every part of it. 1 Kent's Com. 462; *Rice* v. *Minnesota & N. W. R. Co.*, 1 Blake 358, 17 L. Ed. 147; *Kennington* v. *Hemingway*, 57 So. (Miss.) 809; *Learned* v. *Corley*, 43 Miss. 687; *Adams* v. *Railroad*, 75 Miss. 275; *Bonds* v. *Greer*, 56 Miss. 710; *Gunter* v. *City of Jackson*, 130 Miss. 637; *Huber* v. *Freret*, 103 So. (Miss.) 3.

As stated above, if section 6, Act of 1873, is to be interpreted as ratifying the deed to Baldwin and confirming title in him to the land, then there is no land left

upon which the first five sections to the act are to operate
and the manifest purpose of the legislature is defeated.
To give to section 6 of the act the meaning contended for
by appellant is to render it repugnant to the remainder
of the act, to nullify the remainder of the act and defeat
its manifest purpose.

As we have shown, the company conveyed to Baldwin
in 1872 all of the more than one hundred thousand acres
donated to the company by the Act of April 8, 1871. And
it is shown by the certificate of R. D. Moore, Land Com-
missioner, that all of these lands have been repatented by
the state to divers persons. So that, the effect of hold-
ing that section 6 of the Act of 1873, ratified title to these
lands in Baldwin will not only endanger and sacrifice
great public interests by defeating the purpose of Con-
gress in making the donation and by defeating the pur-
pose of the state in originally donating the land to the
Improvement Company, but will jeopardize both the pub-
lic interest and the public good by divesting the citizens
of the state and holders of these lands under second pat-
ents of their titles thereto, thus subjecting the citizens
to disastrous and harassing litigation over titles thought
to be held secure under these second patents and the rules
of property fixed by the decisions of the courts of this
state for more than half a century. *Byrd* v. *U. S.,* 187
U. S. 118, 23 Sup. Ct. Rep. 42, 47 L. Ed. 100.; *Pickering*
v. *Day,* 3 Houston (Del.) 474, 95 Am. Dec. 291.

In this connection we desire to say that it is not our
contention that this court should hold this act to be in-
valid or unconstitutional; but it is our contention that
appellant has not complied with the requirements of the
act, and is, therefore, not in a position to claim the bene-
fits of the act.

We submit, therefore, that the court is not called upon
to sacrifice the true intent and purpose of the legislature
as gathered from the first five sections of the act of 1873
by giving effect to section 6 thereof as contended for by
appellant, and thereby to endanger and jeopardize great

public interests and to defeat the manifest will of the legislature.

The decisions of this court in *Hardy* v. *Hartman,* 65 Miss. 505, and *Becker* v. *Bank of Columbia,* 73 So. 798, and *Tynes* v. *Southern Pine Company,* 54 So. 885, are rules of property which appellee is entitled to and does rely upon.

IV.  We earnestly submit that from all the facts and circumstances admitted and proved in this case that the fourth finding of the chancellor is eminently correct. It is perfectly clear that this transfer was made purely and solely for the purpose, as stated by Judge BENNETT, of enabling the interested parties to litigate in the Federal court where they thought they would be safe, as under the case of *Southern Pine* v. *Hall,* 105 Fed. Rep. —, the title of the pearl River Improvement & Navigation Company had been upheld.

It also seems perfectly clear to us, and must have so appeared to the court, that the actual ownership and control of the land was not intended to depart from the trustees.  The circumstance which indicate this is "the unrecorded deed, left under the control of the general counsel for the trustees."  Also the fact that as soon as the rule in the Wisner case was abolished, everybody *immediately* forgot that the land had been transferred and suits were filed in the Federal court by the trustees.  In support of the court's fourth finding, see 2 R. C. L., p. 965, par. 41; *Trentor* v. *Pothen,* 24 A. S. R., p. 232 (note); *Hunter* v. *Watson,* 73 Am. Dec. 548; *Allen* v. *McCalla.* 96 Am. Dec. 63; *Littauer* v. *Houck,* 31 A. S. R. 574; 6 C. J. pp. 638-641, par. 144.

Appellant cannot complain because of the fact that her agents and attorneys when they were representing the trustees forgot that she owned the land and when they were representing her they forgot that the trustees were claiming it and prosecuting suits in the Federal court to cancel the adverse title.  She is bound by their acts

and knowledge. See *Surety Ins. Co.* v. *Treadwell,* 113 Miss. 189, 74 So. 143.

From the foregoing authorities, as applied to the facts, circumstances, presumptions and reasonable deductions from such facts, circumstances and presumptions, it is perfectly clear that the chancellor was unquestionably correct in each and every one of his holdings.

Argued orally by *E. O. Sykes* and *H. C. Holden,* for appellant, and *C. V. Hathorn,* for appellees.

Cook, J., delivered the opinion of the court.

The appellant, Louisa E. Dresser, filed a bill in the chancery court of Pearl River county, claiming to be the owner of, and seeking to quiet and confirm her title to, the south half of the northwest quarter, and the east half of the southeast quarter of section 36, township 2 south, range 15 west, in Pearl River county, Miss., which lands were alleged to be worth approximately fifteen thousand dollars or twenty thousand dollars.

In the bill the appellant deraigned her title briefly as follows: That these lands were swamp and overflowed lands, donated by Act of Congress of September 28, 1850 (U. S. Comp. St., sections 4958-4960), to the state of Mississippi; that thereafter, in accordance with an Act of the legislature of the state, approved on April 8, 1871 (Laws 1871, chapter 169), these lands, with others, were patented by the state of Mississippi to the Pearl River Improvement & Navigation Company on June 27, 1871; that the Pearl River Improvement & Navigation Company, on November 28, 1872, for a valuable consideration, conveyed these lands, with others, to M. S. Baldwin; that thereafter, through mesne conveyances set out in the bill, but unnecessary to be here stated, the Edward Hines Yellow Pine Trustees became the owners of this land on January 1, 1918; and that on October 13, 1920, the Edward Hines Yellow Pine Trustees, by warranty deed,

conveyed it to the appellant; the consideration recited in this deed being one dollar and other good and valuable consideration.

The bill then deraigned the asserted title of the appellees, beginning with a patent issued by the state of Mississippi to one Mitchell on December 7, 1883, and thence by mesne conveyances to the appellees, and it is averred that the alleged title of the appellees is null and void because the state had parted with its title to these lands to the predecessors in title of the appellant long before the patent of the state was issued to the said Mitchell.

It was then particularly alleged that by virtue of the provisions of chapter 114 of the laws of the state of Mississippi of 1873, and especially by virtue of section 6 of said act, the deed of the said Pearl River Improvement & Navigation Company of November 20, 1872, by which these lands were conveyed to M. S. Baldwin, was legalized, ratified, and confirmed; that by this act the state legally and validly parted with all of its title to the land in controversy, and by virtue of its provisions the appellant had a valid and legal title to this 160 acres of land. The prayer of the bill is for a temporary injunction to prevent the cutting and removal of timber on the land, and for a final degree canceling the asserted claim of the appellees, and quieting and confirming the appellant's title to the land.

The answer of the appellees to this bill of complaint is very long, and we shall not set out in detail the averments thereof. The answer denies that the appellant is the real owner of the land, denies the deraignment of her title, and deraigns the appellee's title in full. It is further charged that the deed from the Edward Hines Yellow Pine Trustees to the appellant was not executed and delivered on October 13, 1920, but was executed in 1923; that the deed is feigned, fictitious, fraudulent, and void, and was not executed for the purpose of passing the claim of title of the Edward Hines Yellow Pine Trustees to the appellant, but was executed for the fraudulent purpose

of relitigating, through the appellant, the title to these lands for the secret benefit of the said Yellow Pine Trustees. The answer then sets out the history of former litigation between the Edward Hines Yellow Pine Trustees and the appellees, in which the title to these same lands was involved, and charges that the appellant acquired her alleged title to the lands after the conclusion of said former litigation in the Federal courts; that, if she did acquire a deed to this land in 1920, then she purposely and by agreement with the Edward Hines Yellow Pine Trustees withheld her deed from record until her grantors could litigate the title to this land in the Federal court with the appellees; that the judgment of the Federal court in the former litigation involving the title to this land is *res adjudicata* of the issues involved in this case; that the appellant is not the real complainant in the case, but that the Edward Hines Yellow Pine Trustees, for their own secret benefit, are now trying to relitigate, under some secret arrangement with appellant, the issues already determined in the Federal court; that this secret arrangement constitutes a dishonest and unlawful conspiracy between) these trustees and the appellant, Louisa E. Dresser, whereby they are attempting to perpetrate a fraud upon the defendants and upon the court; that the appellees are *bona-fide* purchasers of these lands without any notice or knowledge of the appellant's claim of title; that, because of her failure to record her deed, the appellees are entitled to protection against said deed under the recording statutes; that this conduct of appellant in withholding her deed from record misled and deceived the appellees; and that appellant is now estopped from claiming the land. The answer then invoked the "rule of property" doctrine under the decision in *Hardy* v. *Hartman,* 65 Miss. 504, 4 So. 545, in which the title of the Pearl River Improvement & Navigation Company was declared to be null and void; which decision has been reaffirmed and the doctrine of rule of property announced in the cases of *Becker* v. *Columbia Bank,* 112

Miss. 819, 73 So. 798, *Edward Hines Yellow Pine Trustees* v. *State,* 134 Miss. 533, 98 So. 158, and *Hines Yellow Pine Trustees* v. *Martin* (Miss.), 99 So. 825. By a supplemental answer the appellees averred that over one hundred thousand acres of land were patented to the Pearl River Improvement & Navigation Company; that thereafter, under the construction placed upon the statutes by this court and by state officers, the state had subsequently again sold these lands, and that the title to many thousands of acres of land would be overturned, should the court now hold the title of the appellant valid in this case.

This cause involves a reconsideration of the Pearl River Improvement & Navigation Company's titles which have been the subject of much litigation in both the courts of this state and the Federal courts, and in order that the manner in which the present suit arose, as well as the issues involved therein, may more fully appear, we shall set out briefly a history of this former litigation, all of which appears from the testimony of witnesses and the records of these former cases which were introduced at the trial of this cause.

In the case of *Hardy* v. *Hartman,* 65 Miss. 504, 4 So. 545, which was decided in the year 1888, it was held that the act of 1871, by which the Pearl River Improvement & Navigation Company was created, did not divest the state of title to the lands attempted to be conveyed to this company, and that patents issued to the company, without the conditions named in the statute having been complied with, were void.

In the case of *Becker* v. *Columbia Bank,* 112 Miss. 819, 73 So. 798, the decision in *Hardy* v. *Hartman* was reaffirmed, and it was held that it established a rule of property which would not be disturbed. The record of the case of Columbia Bank, *supra,* which was introduced in evidence in the case at bar, shows that the act of 1873 was specially pleaded and offered in evidence as one of the defendants' muniments of title for the purpose of

showing that the defendants' title had been validated, ratified, and confirmed; but it was not commented upon in the briefs of counsel or in the opinion of the court.

The next definite announcement on the subject appears in the case of *Edward Hines Yellow Pine Trustees* v. *State*, 134 Miss. 533, 98 So. 158, where, in passing upon a suggestion of error, the court said:

"We are not here concerned with the correctness of the decision in *Hardy* v. *Hartman, supra* [65 Miss. 509, 4 So. 545], and the rule there applied, whether correct or not, to titles derived through patents issued to the Pearl River Improvement & Navigation Company, has become a rule of property and will not be now departed from."

The lands involved in the case of *Edward Hines Yellow Pine Trustees* v. *Martin* (Miss.), 99 So. 825, were lands which were originally patented to the Pearl River Improvement & Navigation Company, but the validity of this title to this company was not asserted in the court below, or in this court until the filing of a suggestion of error, when it was for the first time contended that these titles were validated and confirmed in the purchasers of the land. This suggestion of error was overruled without a written opinion.

In the Federal courts the validity of these titles was first called in question in the case of *Bradford* v. *Hall*, 36 F. 801, in which the district court held that the decision of this court in *Hardy* v. *Hartman, supra*, to the effect that the bond required by the act of 1871 had not been filed, and, consequently, that no title to these lands passed to the Pearl River Improvement & Navigation Company was binding on the Federal district court. It was also held in that case that the Acts of 1873, chaper 114, did not validate these titles.

In *Southern Pine Co.* v. *Hall*, 105 F., 84, 44 C. C. A. 363, the circuit court of appeals, Fifth circuit, held that a Federal court will exercise an independent judgment as to the construction of a state statute in a case involving rights acquired thereunder before it had received a con-

struction by the state courts, notwithstanding it has since been construed by such court, and refused to follow the holding of *Hardy* v. *Hartman,* that the bond filed by the Pearl River Improvement & Navigation Company was insufficient to authorize the issuance of patents to said company; the holding of the said circuit court of appeals being that the patents issued by the Governor and secretary of state to said company conveyed valid titles to said land.

In the year 1923, the Edward Hines Yellow Pine Trustees filed in the United States district court for the Southern district of Mississippi four separate bills against the parties then claiming to be the owners of the one hundred sixty acres of land involved in the case at bar; the defendant in each of said suits claiming to own forty acres of the lands. In each of these suits the complainants asserted title in themselves under and by virtue of a patent from the state of Mississippi to the Pearl River Improvement & Navigation Company and mesne conveyances to the complainants, and prayed for a cancellation of the patents and the several deeds relied upon by the defendants, and for a decree that complainants were the sole and only real, true, legal, and equitable owners of the lands described in the bills of complaint. These four suits were consolidated and tried together in the district court, and a judgment was entered, denying the relief prayed for by the complainants, and adjudging that the defendants were the owners thereof. On appeal, the circuit court of appeals, Fifth circuit, followed the decision of this court holding these titles invalid, and affirmed the judgment of the district court, saying:

"In the case of *Southern Pine Co.* v. *Hall,* 105 F., 84, 44 C. C. A. 363, the circuit court of appeals reached the conclusion that the bond was a compliance with the statute and the patent issued to the Pearl River Improvement & Navigation Company was valid. . . .

"We have, therefore, the question whether the rule of title to real property, as decided by the supreme court of the state of Mississippi, should be applied in this case as was done by the district judge. We think that is the proper rule, and that there is no error in the decree. There cannot be two contradictory rules of title to real property dependent upon the statutes of a state. The construction of such statutes by the highest court of the state is binding upon the courts of the United States in cases not falling within some narrow exceptions.

"This rule of property has existed in the state of Mississippi since 1888, and, being such, it will be applied by this court in deciding cases arising under the statute." 296 F. 442.

On May 25, 1925, this judgment was affirmed by the supreme court of the United States, *Edward Hines Yellow Pine Trustees* v. *Martin et al.*, 268 U. S. 459, 45 S. Ct. 543, 69 L. Ed. 1050, and upon the argument of the case in that court, the complainants for the first time in the course of that litigation, relied upon the effect of chapter 114 of the Laws of Mississippi of 1873 as validating their title, and that court held that it would not consider questions not raised or disclosed by the record brought it for a review and which were not considered by the court below.

On June 5, 1925, just ten days after the final decision of the above-mentioned case by the supreme court of the United States, the appellant, Louisa E. Dresser, filed, for record in the chancery clerk's office of Pearl River county, a deed from the Edward Hines Yellow Pine Trustees which conveyed to her the same lands as were involved in the case of *Edward Hines Yellow Pine Trustees* v. *Martin, supra;* this deed being dated October 13, 1920, and on June 18, 1925, she filed her bill of complaint, the substance of which has already been stated.

Upon the hearing of the motion to dissolve the injunction, the deraignment of the alleged title of the respective parties was admitted by agreement of counsel, and, after

the introduction of the records in the four Federal cases above referred to, the record in the case of *Becker* v. *Columbia Bank, supra,* and various other records and documents not here necessary to be stated, the appellees offered the affidavit of the deputy chancery clerk of Pearl River county to the effect that the deed to the appellant was handed to her by Judge WILLIAM S. BENNETT, general counsel of the Edward Hines Yellow Pine Trustees; that when it was offered for record it did not contain revenue stamps; that Judge BENNETT purchased and placed thereon stamps to the amount of eight dollars; and that he requested her to let the record show that it was filed by another named party, if it were necessary that it show who filed the deed.

There were also introduced the affidavits of F. C. Martin, the immediate predecessor in title of the appellees, and one of the defendants in the litigation over these lands in the Federal court, to the effect that he did not know that the appellant claimed any interest in the lands until her deed was placed of record; that these lands had never been conveyed by him to a resident of Illinois; and that he never at any time had any intention of so doing. There was also introduced a certificate of the state land commissioner, which shows that more than one hundred sixteen thousand acres of land were patented to the Pearl River Improvement & Navigation Company, and that subsequent to this time this land was sold to individuals in small quantities as swamp and overflowed lands of the state.

In addition to certain record and documentary evidence, the appellant's affidavit was offered, which briefly was to the effect that she is a resident citizen of the city of New York; that on the 13th day of October, 1920, the deed in question was made to her by the Edward Hines Yellow Pine Trustees; that subsequently it was delivered to her and accepted by her in good faith without any understanding or agreement whatsoever between her and the grantors for a reconveyance to the grantors, or

any one else; that the deed was made and accepted in good faith for a valuable consideration paid by Judge WILLIAM S. BENNETT; that there was no agreement or understanding between her and the Edward Hines Yellow Pine Trustees, or any other person or corporation, to withhold the deed from recordation until certain suits pending in the Federal courts had terminated, or for any other purpose; that she knew nothing of the suits involving these lands which had been pending in the Federal courts until after they had finally been decided in those courts; that there was no understanding or agreement between her and the grantors whereby the grantors might be enabled to relitigate the title to the land involved in the suits in the Federal courts; and that the Edward Hines Yellow Pine Trustees have no interest in the present suit or in the subject-matter thereof.

The appellant then offered the affidavit of Edward Hines, one of the trustees of the Edward Hines Yellow Pine Trustees, which is a common-law trust, of which he is the president, and he testified to the execution of the deed to this appellant on the 13th day of October, 1920; that the deed was made, signed, and delivered without any agreement or understanding whatever that the land should be reconveyed to these trustees, or to any other person; that the conveyance was made in good faith and for a valuable consideration, and was a *bona-fide* conveyance in every respect; that there was no agreement between the trustees and the appellant that the deed should be withheld from record until certain suits filed or to be filed in the Federal court could be litigated; that there was no secret agreement or understanding between these trustees and the appellant whereby the deed was made a device by means of which the title to the said land might be relitigated; that subsequent to the execution of this deed the deponent had never seen it, and had forgotten about its execution at the time of the filing of the suits in the Federal courts; that these suits were filed in good faith to establish the title of the trustees to

the property; and that, if deponent had not forgotten about the execution of the conveyance, the suits might have been brought any way to protect the warranty of the trustees.

The appellant then introduced the affidavit of Judge William S. Bennett, who testified to the residence of the appellant and that she was for more than fifteen years a faithful employee of affiant; that he drew the warranty deed from the trustees to the appellant which was executed by Mr. Hines; that the deed was made in good faith for a consideration of either ten dollars or twenty-five dollars, and for other considerations, and was a *bona-fide* conveyance; that there was no agreement or understanding with the appellant as to any subsequent reconveyance to the trustees, or any other person, or that the grantee should withhold the deed from record until the determination of certain suits to be filed in the Federal court; that the affiant is the general counsel for the Edward Hines Yellow Pine Trustees, and was such on and after the day the deed was executed; that as such he is familiar with the property owned by the trustees, and that they own a large and extensive acreage; that the deed to this one hundred sixty acres of land was made to the appellant long before the institution of the suits in the Federal court; that, when these suits were about to be brought, the fact that this land had been conveyed to the appellant was overlooked by him; that he told the appellant nothing about the contemplated suit; that subsequent to the delivery of the deed to the appellant she turned it over to affiant to be recorded, but that it was filed away and inadvertently overlooked; and that, after the litigation in the Federal courts was finally determined, he went through the papers, and found the deed to appellant unrecorded, and he personally recorded it; that early in 1920 deponent was informed that F. C. Martin had caused the adversary title to these lands to be transferred to a resident of the state of Illinois, in which state all of the trustees of the Edward Hines Yellow Pine

Trustees resided; that under the case of *Ex parte Wisner,* 203 U. S. 449, 27 S. Ct. 150, 51 L. Ed. 264, which was at that time the ruling case on actions in the United States court, based on diversity of citizenship, such a transfer would have made it impossible to litigate this title in the United States court; that affiant also knew that the supreme court of Mississippi had held these titles bad, but did not know that section 6 of the act of 1873 had never been passed on by this court; that as the situation then stood the party or parties who held the adversary title could have commenced a suit in the chancery court of Pearl River county, which could not have been removed to the Federal court under the case of *Ex parte Wisner* if plaintiff was a resident of Illinois, and therefore there could be no good defense as then known because of the *Hardy* v. *Hartman* decision; that affiant thought Mr. Martin and his attorneys were thereby maneuvering to prevent a contest of this title in the Federal court; that for this reason, and on the advice of affiant, the property was conveyed to the appellant, a citizen of New York; that affiant paid the consideration to the grantees; that affiant believed the trustees' title to be good under the decision of the *Southern Pine Co.* v. *Hall,* 105 F. 84, 44 C. C. A. 363, and that, rather than see the adversary title prevail, he preferred to have executed a deed and pass a good title to a personal friend who was in position to and could successfully protect this title when the trustees could not.

In view of the fact that the validity of appellant's claim of title rests entirely on the construction and effect of chapter 114, Laws of 1873, and in view of the contention of counsel for the appellant that this act has never been considered or passed upon by this court, and consequently that the decisions in the cases of *Hardy* v. *Hartman,* 65 Miss. 504, 4 So. 545, *Becker* v. *Columbia Bank,* 112 Miss. 819, 73 So. 798, *Edward Hines Yellow Pine Trustees* v. *Martin* (Miss.), 99 So. 825, and *Edward Hines Yellow Pine Trustees* v. *State,* 134 Miss. 533, 98 So. 158, cannot

be invoked as controlling here, and, as a rule of property, we will set out this act in full, which reads as follows:

"An act to authorize the state treasurer to receive and receipt for certain moneys, and for other purposes.

"Whereas, the legislature of the state of Mississippi passed an act incorporating the Pearl River Improvement and Navigation Company, under the provisions of which act certain lands inured to said company, and have been patented to said company, in compliance with the act of incorporation; and,

"Whereas, the object and purpose of said act was the improvement of Pearl river, which improvements are impracticable for the reason that said act is too vague and indefinite to permit said improvements as contemplated by the spirit of the same; and,

"Whereas, heretofore said lands have not been subject to taxation, and by the sale to said company the same have become taxable, and the taxes thereon paid, thus contributing to the public revenue: Therefore,

"Section 1. Be it enacted by the legislature of the state of Mississippi, that the Pearl River Improvement and Navigation Company, through its officers, agents and attorneys, be authorized and required to pay into the state treasury, on or before the first day of October, 1873, twenty-five cents per acre for the land which has been patented to said company, and upon payment of said twenty-five cents per acre for the lands so patented to said company, the state treasurer shall issue to persons so paying the same a receipt, and if said receipt and payment be for an amount equal to the aggregate value of said land for which said company holds the legal and equitable title, at the rate of twenty-five cents per acre for the lands so held, and upon presentation of said receipt to the secretary of state, he shall cancel and deliver up the bond on file in his office to secure a compliance of the provisions of the act of incorporation.

"Sec. 2. Be it further enacted, that in all cases where any person or persons have purchased from the board

of swamp land commissioners of the Pearl River district or its lawfully authorized agent, any lands for which patents have been issued to said company, and have paid for the same in good faith, and received certificates of purchase or receipts therefor, but have failed to present said certificates to the secretary of state for the purpose of obtaining patents for said lands, the said Pearl River Improvement and Navigation Company is hereby required, on satisfactory proof of said purchase being made, to execute to such person his, her, or their heirs or assigns, as the case may be, holding such certificates or receipts, a quitclaim deed to said lands, relinquishing all right, title, interest, and claim to said lands: Provided, that said persons holding such certificates shall make application to said company, or its authorized agent, for the execution of said deed within the space of six months from the date of the passage of this act, and in case such persons holding certificates as aforesaid to said lands so patented to said company, shall not make application for said deed of quitclaim by said company within the six months fixed by this act, the title of the said company to all the lands patented to them shall become absolute and indefeasible in law and equity, and all persons claiming under certificates of purchase issued in good faith, who shall not make application for a quitclaim deed as above provided, shall, after the lapse of the six months aforesaid, be forever barred, estopped from setting up title to any of the lands so patented to said company: Provided, that as to all lands about which there is no controversy of title, the said Pearl River Improvement and Navigation Company shall be entitled to receive patents instantly upon the payment thereon of the said sum of twenty-five cents per acre: And provided further, that in the final settlement with the treasurer, the said company shall receive a credit of twenty-five cents per acre for each and every acre of land which they may release under the provisions of this act.

"Sec. 3. Be it further enacted, that the application for deeds of quitclaims under this act shall be supported by affidavit of the person making the same, setting forth the numbers of the land purchased, and that the full price fixed by law has been paid to the treasurer of the board of swamp land commissioners therefor, which said affidavit with the certificate of purchase shall be filed in the office of the clerk of the chancery courts of the several counties aforesaid within the space of six months from the date of the passage of this act. The clerk of the court aforesaid shall thereupon forward certified copies of said certificates of purchase with the affidavits aforesaid, whereupon the Pearl River Improvement and Navigation Company shall execute the deeds of quitclaim provided for in this act, which shall be forwarded by the secretary of state to the clerks aforesaid for delivery to the parties interested.

"Sec. 4. Be it further enacted, that if said payments as referred to in the first section of this act are not made on or before the said first day of October, 1873, then all rights, title, interest and claim of said company, in and to said land shall revert to the state, and shall, by the provisions of this act, rest absolute in the state.

"Sec. 5. Be it further enacted, that in order to secure the carrying out of the provisions of this act, said company, through its officers, shall, upon the approval of this act, deposit with the secretary of state all the patents for said lands which have been made by the state; said patents to be delivered to the company only upon a strict compliance with this act.

"Sec. 6. Be it further enacted, that all acts and parts of acts, and all acts, deeds and proceedings, whatever of the Pearl River Improvement and Navigation Company, be, and the same are hereby legalized, ratified and confirmed; this act to take effect and be in force from and after its passage."

It is undoubtedly true that, in the case of *Becker* v. *Columbia Bank, supra,* the question of the effect of the

act of 1873 was specially raised by the pleadings, and that
the act was offered in evidence as "validating and cur-
ing any defects that may have existed in the title to the
Pearl River Improvement and Navigation Company, and
validating the patent issued by the state to the said com-
pany," but an examination of the briefs of counsel in
that case shows that the fact that this act was specially
pleaded was mentioned only in the statement of facts, and
was not pressed or commended upon in the argument,
and while the opinion of the court affirmed the doctrine
announced in *Hardy* v. *Hartman,* 65 Miss. 505, 4 So. 545,
and held that the patents issued to this company were
invalid, the act of 1873 was not referred to in the opin-
ion in any way. In the case of *Yellow Pine Trustees* v.
*State,* 134 Miss. 533, 98 So. 158, there was no attempt to
invoke the act of 1873 until the filing of a suggestion of
error, and the appellant contends that this court has
never expressly, or by necessary implication, construed
or passed upon the said chapter 114, Laws of 1873, and,
consequently, that no rule of property has been estab-
lished which governs this title which the appellant claims
was validated and confirmed by virtue of the provisions
of this act.

Without deciding the point, but accepting as true the
contention that this court has not heretofore considered
or passed upon the effect of this act of 1873 upon the
validity of the title to the lands patented to this company,
we will respond to the contention that this act, and espec-
ially section 6 thereof, validated and legalized the title
of all of such lands as had been sold by this company prior
to the passage of the act.

This act declared that the object and purposes of the
act of 1871, which was the improvement of Pearl river,
had failed, and that before these lands were patented to
the company they were not subject to taxation, but that
since, by reason of said sale to said company, they had
been assessed for taxes and the taxes paid, thus contrib-
uting to the public revenue, the said company for that

reason should have the right to purchase the lands patented to it, by paying into the state treasury in cash, on or before the 1st of October, 1873, twenty-five cents per acre; but, if said payment was not made within that time, then the title to all of said lands not so purchased should revert to and vest absolutely in the state. It was also provided that, upon the passage and approval of the act, the officers of said company should deposit with and surrender to the secretary of state all the patents for said lands which had been theretofore made by the state, and that, upon the payment into the state treasury of an amount equal to the aggregate value of all the lands for which said company held the legal and equitable title, at the rate of twenty-five cents per acre, and upon presentation to the secretary of state of a receipt for such aggregate sum, he should cancel and deliver up the bond which had been filed in his office to secure the company's compliance with the provisions of the original act of incorporation.

It was also provided that in case the original patents issued to this company embraced land which had been previously sold by the board of swamp land commissioners of the Pearl River district, but for which patents had not been issued to such purchasers, and the title to such land should become vested in said company by reason of the payment of the twenty-five cents per acre provided by the act, then in that event the said company was required, on saisfactory proof of such purchase being made, to execute to said purchasers a quitclaim deed, provided such purchasers should make application to the company and furnish the required proof within six months after passage of the act. Upon the execution of any such quitclaim deeds, it was provided that the company should receive credit for the lands so quitclaimed at the rate of twenty-five cents per acre, and, in the event the purchasers of any of such land should not make application to the company for a quitclaim deed within six months after the passage of the act, the title of the said

company to such lands should become absolute. By section 6 of the act it is provided that—"All acts and parts of acts, and all acts, deeds and proceedings, whatever of the Pearl River Improvement and Navigation Company, be, and the same are hereby legalized, ratified and confirmed."

And it is upon this last provision that appellant rests her claim of title.

To sustain the contention of appellant that section 6 of this act validated the title of all lands which had been sold to individuals by the company prior to its passage, and especially the deed from the company to M. S. Baldwin, through which she claims, it would be necessary to hold that the act was intended to and does deal with two classes of land: First, land which had been patented to and was still owned by the company; and, second, land which had been patented to the company and sold by it to individuals prior to the passage of the act, and we do not think it is susceptible of this construction. Section 1 of the act authorizes and requires the company to pay into the state treasury, on or before the 1st day of October, 1873, twenty-five cents per acre for all the land theretofore patented to the company; while section 4 of the act provides that, if the payments required by section 1 are not made on or before that date, then all rights, title, interest, and claim of the company to said land shall revert to and vest in the state. Section 5 of the act requires that the officers of the company shall, upon the approval of the act, deposit with the secretary of state *all* the patents for said land which had been previously issued by the state, and a strict compliance with the provisions of the act was made a condition precedent to the redelivery of these patents to the company; that is to say, that these patents would only be delivered upon the payment of twenty-five cents for each acre conveyed thereby. That this is the meaning and effect of said section 5 is made manifest by the proviso in section 2 that, as to all lands about which there is no controversy of

title, the company shall be entitled to receive the patents *instantly* upon the payment thereon of the said sum of twenty-five cents per acre.

The meaning of the language of section 6 is ambiguous, and it must be construed in connection with the whole statute of which it is a part, and, in arriving at the meaning of the act, resort may be had to the manifest purpose and intention of the legislature in adopting it. *Gunter* v. *City of Jackson,* 130 Miss. 637, 94 So. 844; *Huber* v. *Freret,* 138 Miss. 238, 103 So. 3. When all the provisions of this act are construed together it is manifest that the dominant purpose thereof was to relieve the Pearl River Improvement Company from its obligation, under the act of April 8, 1871, to improve Pearl river, and to secure instead the payment into the state treasury of the value of the land, twenty-five cents per acre, or, in default thereof, title to the land was to vest in the state; and this payment into the state treasury of twenty-five cents per acre was made a condition precedent to the confirmation of the title of any of the lands previously patented to this company. Construing all the provisions of this act together, it seems clear that in enacting it the legislature proceeded upon the theory that this company was still the owner of all the lands which had been patented to it, and if the words "deeds and proceedings," as used in section 6 of the act, has any reference to conveyances of land, which we think is very doubtful, it was certainly not intended that it should cover any conveyance of the lands which had been patented to this company and previously sold. The manifest purpose of the act was to invalidate these patents and to revest the title to all these lands in the state, unless the provisions and conditions of the act were strictly complied with, and there is no showing or contention in this case that any of the payments stipulated for in the statute were ever made, so that no title ever vested in the company or any of its vendees, and all the confirmations provided in the act became inoperative. Consequently, under the rule announced

in the case of *Hardy* v. *Hartman, Becker* v. *Columbia Bank,* and *Edward Hines Yellow Pine Trustees* v. *State, supra,* the title of the said Pearl River Improvement & Navigation Company to these lands is invalid, and the appellant, consequently, acquired no title under her deed from the trustees.

The decree of the court below dissolving the injunction will therefore be affirmed, and the cause remanded.

*Affirmed and remanded.*